# TRIBAL CONSUMER FINANCIAL SERVICES ORDINANCE

(Consumer Finance Services Regulatory Commission Ordinance, enacted on February 10, 2010, OMTC# 210565; Tribal Consumer Services Financial Ordnance, enacted on June 10, 2014, OMTC# 0610054; consolidated, amended and superseded by the Tribal Consumer Financial Services Ordinance,, enacted on, May 3, 2018, OMTC# 050341)

## SECTION 1.  FINDINGS, INTENT, AND POLICY

1.1     Findings.  The Tribal Council of the Otoe-Missouria Tribe of Indians ("Tribal Council"), the primary governing body of the Tribe, finds that:

(a)     The Tribe desires to expedite the development of its economy in order to improve its economic self-sufficiency, to enable it to better serve the social, economic, educational, health, and safety needs of its members and visitors, and to provide its members with opportunities to improve their own economic circumstances.

(b)     Tribal operation and licensing of one or more Consumer Financial Services business(es) is a legitimate means of generating revenue to address the aforementioned needs and to pursue the Tribe's sovereign right of self-sufficiency and self-determination.

(c)     The Tribe has the legal authority to license and regulate Consumer Financial Services businesses within its jurisdiction.

(d)     A properly licensed and regulated Consumer Financial Services industry is consistent with announced federal policy promoting tribal self-government and economic self-sufficiency.

(e)     Tribal regulation and control of Consumer Financial Services businesses within the jurisdiction of the Tribe is essential for the protection of the public welfare.

(f)     It is essential that the Tribal Council regulate Consumer Financial Services business in a manner commensurate with Tribal law and policy and applicable federal law.

(g)     It is essential that public confidence in Consumer Financial Services business that takes place within the Tribe's jurisdiction be maintained.

(h)     Advancement of the Tribe's engagement in and regulation of Consumer Financial Services by way of adopting this enhanced Tribal Consumer Financial Services Ordinance ("Ordinance")by the Tribal Council is a necessary condition for the legal operation of Consumer Financial Services within the Tribe's reservation and serves the Tribe's best interests.

(i)     The continued operation of the Consumer Finance Services Regulatory Commission to implement the purpose and intent of the Ordinance within the Tribe's reservation serves the Tribe's best interests.

Case 1:25-cv-00489-BBC     Filed 09/08/25     Page 1 of 26     Document 24-1

1.2     Intent. The Tribal Council, on behalf of the Tribe, declares that the intent of this Ordinance is to:

(a)     Diversify and expedite the development of the economy of the Otoe-Missouria Tribe of Indians for the purposes described in section 1.1(a) above.

(b)     Define general regulatory powers to be exercised by the Commission in relation to the regulation, control, and oversight of Consumer Financial Services businesses.

(c)     Ensure that all Consumer Financial Services business profits are used for the benefit of the Tribe's government and its members and are used to improve the Tribe's economic self-sufficiency, to enable the Tribe to better serve the social, economic, educational, health, and safety needs of its members and visitors, and to provide its members with opportunities to improve their own economic circumstances.

(d)     Ensure that Consumer Financial Services are conducted appropriately by Licensees and remains free from abusive, corrupt, deceptive, unconscionable, unfair, and dishonest practices.

(e)     Protect the interests of the public in the offering of Consumer Financial Services.

(f)     Ensure the maintenance of public confidence in Consumer Financial Services practices.

(g)     Ensure that there is a forum for the fair and orderly resolution of Consumer Financial Services disputes.

(h)     Ensure that Tribal consumer financial services laws and regulations are fairly enforced.

1.3     Policy.

(a)     Tribal Policy of Self-Government. The Tribe is firmly committed to the principle of Tribal self-government. Profits from Consumer Financial Services shall be utilized and expended only for the following purposes:

(1)     To fund the Tribe's government operations or programs.

(2)     To provide for the public health and general welfare of the Tribe and its members and visitors to the Tribal community.

(3)     To promote the Tribe's economic development and self-sufficiency.

(4)     To donate to charitable organizations.

Case 1:25-cv-00489-BBC     Filed 09/08/25     Page 2 of 26     Document 24-1

(b)  <u>Responsibility for Regulation</u>.  The Tribe shall have sole proprietary interest in, and the responsibility for, the regulation of the Consumer Financial Services business authorized by this Ordinance.

(c)  <u>Consumer Financial Services Authorized</u>.  This Ordinance and any regulations developed in accordance with this Ordinance are the sole authority through which Consumer Financial Services may be offered under the Tribe's jurisdiction.  Any Lender shall only originate Loans from within the Tribe's jurisdiction.

## SECTION 2.  DEFINITIONS

As used in this Ordinance, unless the context otherwise requires:

2.1  "Applicant" means any Person who has applied for a License under the provisions of this Ordinance.

2.2  "Application" means a request for the issuance of a License under the provisions of this Ordinance.

2.3  "Business day" means any calendar day except Saturday, Sunday, and any Federal holiday.

2.4  "Commission" means the Tribal Consumer Finance Services Regulatory Commission, created and established by the Tribal Council and charged with the implementation and enforcement of the Ordinance.

2.5  "Commissioner" means any person appointed to the Commission.

2.6  "Consumer" means a natural Person who receives or attempts to receive a Loan or other Consumer Financial Services for personal, family, or household purposes from a Licensee as allowed under this Ordinance. The term does not include a person who receives or attempts to receive a loan or financial service primarily for business, commercial or investment purposes.

2.7  "Consumer Financial Services" means the business of providing a Loan or other financial services or products to Consumers in transactions subject to this Ordinance in exchange for interest, fees, or other form of consideration on the Tribe's land or within the Tribe's jurisdiction.

2.8  "Lender" means an economic development arm of the Tribe formed or organized pursuant to Tribal law that is wholly-owned by the Tribe and engages in Consumer Financial Services pursuant to a License that is active and in good standing with the Commission. A Lender may offer and issue Loans to Consumers through any method permitted by the Commission.

2.9  "License" means the official and legal privilege and authority granted by the Commission to engage in Consumer Financial Services.  A License is a revocable privilege and not a vested right.  A License will be issued in a format determined by the Commission.

Case 1:25-cv-00489-BBC     Filed 09/08/25     Page 3 of 26     Document 24-1

2.10　"Licensee" means any Person licensed by the Commission.

2.11　"Loan" means an extension of credit by a Lender from Tribal Jurisdiction to a Consumer or any Person.

2.12　"Loan Agreement" means any agreement pursuant to which the Lender agrees to extend credit to the Consumer under a specified set of terms and which is not enforceable until it is executed by a Lender operating within the Tribe's jurisdiction.

2.13　"Ordinance" means this Tribal Consumer Financial Services Ordinance.

2.14　"Person" means any natural person, organization, partnership, joint venture, association, trust, firm, estate, club, society, receiver, assignee, trustee in bankruptcy, political entity, company, corporation or other group, however organized or group of individuals acting as a unit, whether mutual, cooperative, fraternal, profit, nonprofit, or otherwise.  The term does not include the Federal Government, any Federal agency, any State Government, any State agency, any federally-recognized Indian tribe, or any tribal governmental subdivision.

2.15　"Tribe" means the Otoe-Missouria Tribe of Indians, a federally-recognized sovereign nation located within the United States of America.

2.16　"Tribal Council" means the Otoe-Missouria Tribe of Indians' Tribal Council, the governing body of the Tribe as described in the Tribe's Constitution.

2.17　"Tribal Jurisdiction" means the Tribe and Commission's ability to exercise authority as described in Section 4.14.

2.18　"Vendor" means any Person who engages or seeks to engage in the business of providing services directly to a Lender or other tribally owned Licensee pursuant to this Ordinance.

## SECTION 3.  TERRITORIAL APPLICATION

This Ordinance applies tothe offering of Consumer Financial Services from the Tribe's land and those subject to the Tribe's Jurisdiction as contemplated by Section 4.14 below.

## SECTION 4.  LICENSES

4.1　Applicability.

(a)　Unless otherwise exempt, any Person seeking to engage in Consumer Financial Services as a Lender or Vendor subject to this Ordinance shall apply for and receive a License from the Commission before engaging in Consumer Financial Services.  The following Persons are exempt from the licensing requirements of this Ordinance:

(1)　A Person who engages in Consumer Financial Services without charging or collecting interest or other consideration for a transaction or charges or

Case 1:25-cv-00489-BBC     Filed 09/08/25     Page 4 of 26     Document 24-1

collects nominal or incidental consideration.

(2)     A Vendor that receives less than Twenty-Five Thousand Dollars ($25,000) in any twelve (12) month period from a Licensee.

(3)     A Person who is a bank, savings bank, or savings and loan association organized under the laws of the United States, or any other lender to the Tribe or to a Financial Services Licensee or Debt Collection Licensee.

(4)     A Person who provides financial services to a Licensee and who is licensed, registered, or otherwise subject to the regulatory supervision and oversight of a federal or state agency in order to engage in such financial services.

(5)     A Person licensed or otherwise authorized bya federal or state agency to engage in payment processing, money transmission, tax preparation, or the practice of law.

(6)     Any Person providing solely pre-origination services including but not limited to credit bureaus, lead generators, marketing companies, or similar third-party service providers as identified by promulgated regulation.

(7)     Any other federally insured financial institution and any of their subsidiaries.

(8)     Any employee of the above.

4.2     Application Process.

(a)     An Applicant for a License shall submit to the Commission a notarized Application on form(s) prescribed by the Commission.  The Application shall request such information as the Commission may require, including, but not limited to:

(1)     Information related to the Applicant's financial condition and history, including all other information  the Commission determines necessary to assess the Applicant's financial condition and history;

(2)     The qualifications and business history of the Applicant including disclosure of any previous or ongoing contractual relationships with an Indian tribe;

(3)     Whether the Applicant has  been convicted of or held liable for any: (i) misdemeanor involving fraud or violation of any law governing the provision of Consumer Financial Services or any business of a similar nature; (ii) or other felony;

(4)     Whether the Applicant, within the last two years, has been (i) named in any civil suits (ii) named in any civil suits in which a judgment has been entered; (iii) named in any administrative proceeding; (iv) named in any administrative proceedings in which a judgment has been entered.

Case 1:25-cv-00489-BBC     Filed 09/08/25     Page 5 of 26     Document 24-1

(5) The Applicant shall also provide a complete disclosure of any pending or anticipated civil or criminal action filed against the Applicant in any jurisdiction, including any subpoenas or investigative demands;

(6) Whether the Applicant has ever been permanently or temporarily enjoined by a court of competent jurisdiction from engaging in or continuing any conduct or practice involving any aspect of a Consumer Financial Services or any business of a similar nature;

(7) A description of the nature of the Applicant's business and Applicant's proposed method of doing business;

(8) A list of all other licenses pertaining to Consumer Financial Services or any similar business or services , whether or not such licenses were issued;

(9) The Applicant's tax identification number;

(10) A sworn statement that if the Applicant receives a License the Applicant will submit to the Tribe's jurisdiction and will abide by all applicable Tribal and Federal laws, regulations, and policies and that the information contained in the Application is true and correct to the best of Applicant's knowledge; and

(11) Consent for the Commission to conduct background investigations of the Applicant's civil, criminal, and financial condition and history. The Commission may waive the required consent so long as the required determinations under § 4.3(b) and (c) are met.

(b) Each Application shall be accompanied by a nonrefundable Application fee as determined by the Commission.

4.3 License issuance.The Commission shall issue a License to an Applicant, if, after investigation of the Applicant, the Commission determines to its satisfaction that:

(a) The Applicant has complied with section 4.2 set forth above;

(b) The experience, character, and general fitness of the Applicant satisfy the Commission that the Applicant will conduct the Consumer Financial Services business honestly, fairly, and efficiently. The Commission may make this determination based on an investigation, including a background check, or by other methods sufficient to make a determination;

(c) The Applicant is financially responsible and will conduct the business pursuant to this Ordinance. The Commission may make this determination based on an investigation, including a credit check, or by other methods sufficient to make a determination; and

(d) The Tribe has the sole ownership interest in the Lender Applicant.

Case 1:25-cv-00489-BBC    Filed 09/08/25    Page 6 of 26    Document 24-1

(e) Any Lender Applicant is formed under tribal law and operates from within the Tribe's jurisdiction, and can independently qualify as an economic arm and instrumentality of the Tribe.

(f) Any Lender will only originate Loans from within the Tribe's jurisdiction.

(g) Timely action of Commission. The Commission shall approve or deny an Application for a license by written order not more than thirty (30) Business Days after the Application is filed.

4.4 Temporary License. The Commission may issue a temporary License valid for up to sixty (60) Business Days, with a possible sixty (60) day renewal period for good cause shown. A temporary License shall extinguish upon issuance of a License or denial of an Application.

4.5 License posting. A License issued pursuant to the Ordinance shall be conspicuously posted at the Lender or Vendor's place of business and on each of Lender or Vendor's websites.

4.6 Term. All Licenses shall remain in effect for a period of two years, unless canceled, surrendered, or suspended or revoked by the Commission.

4.7 License renewal. A License may be renewed by filing a renewal Application complying with Section 4.2 and paying a renewal fee determined by the Commission.

4.8 Fees. Application fees, renewal fees, late payment penalties, and other fees to be assessed against any Person as provided for in this Ordinance shall be paid directly to the Commission. The Commission shall deposit such proceeds into an account or fund designated by the Tribal Council.

4.9 License Substance and Classification. The License shall bear on its face the name of the Lender or Vendor, the Tribal Logo, the issue date, the license number and identify the particular activity that the Licensee is authorized to conduct pursuant to the License.

4.10 License surrender. Any Licensee may voluntarily surrender its License at any time by giving written notice of the surrender to the Commission.

4.11 Denial, suspension or revocation.

(a) The Commission may (i) deny an Application, (ii) suspend a License or, (iii) revoke a License after notice and an opportunity for hearing, if the Commission finds that a Licensee:

(1) Failed to notify the Commission within thirty (30) Business Days after the occurrence of any material development, including, but not limited to:

(A) Bankruptcy or other undertaking of insolvency;

(B) Business reorganization due to insolvency;

Case 1:25-cv-00489-BBC     Filed 09/08/25     Page 7 of 26     Document 24-1

(C)  The filing of a criminal indictment, civil complaint, or administrative or regulatory action against the Licensee or any of its officers, directors; or,

(D)  A felony conviction against the Licensee or any of a Licensee's officers, directors or

(2)  Failed to pay initial Application or renewal fees;

(3)  Made a material misstatement or omission on the Application or on any document required to be filed with the Commission or failed to update any Application or any document required to be filed with the Commission;

(4)  Withheld or provided incomplete or insufficient pertinent information;

(5)  Participated in unauthorized Consumer Financial Services;

(6)  Knowingly falsified books or records that relate to a transaction connected with the operation of Consumer Financial Services;

(7)  Failed to keep sufficient books and records to substantiate receipts, disbursements, and expenses incurred or paid;

(8)  Failed to take reasonable measures to ensure that an agreement with a Consumer is not materially breached;

(9)  Refused or failed to comply with any lawful order, inquiry or directive of the Commission, the Tribal Council, or any court or administrative body of competent jurisdiction;

(10)  Poses a threat to the public interest or the Commission's effective regulation of Consumer Financial Services;

(11)  Creates or enhances the danger of unsuitable, deceptive, abusive, unfair, or illegal practices in the conduct of Consumer Financial Services;

(12)  Has been convicted of or has entered a plea of no contest to any crime involving breach of trust or dishonesty;

(13)  Has had an order entered against it by a governmental authority with proper jurisdiction and the order is based on conduct that involved fraud, deceit, misrepresentation, or similar offense of dishonesty by the Licensee;

(14)  Has had a financial judgment ordered against it in a civil action based on fraud, deceit, or misrepresentation, or other civil offense involving dishonesty;

(15)  Employed any person whom the Licensee knew or should have known was convicted of fraud, theft, or embezzlement, or similar offense involving

Case 1:25-cv-00489-BBC    Filed 09/08/25    Page 8 of 26    Document 24-1

dishonesty;

(16) Attempted to bribe or offer something of value to any Person, Tribal Council member, or a Commissioner in an attempt to avoid or circumvent Tribal law or other law or attempt to destabilize the Tribal government;

(17) Stole or attempted to steal funds or other items of value;

(18) Failed to exercise proper oversight of Vendors working with the Licensee, including failing to ensure that such Vendors comply with the terms of this Ordinance and applicable federal law;

(19) Failed to comply with the terms of this Ordinance or applicable federal law or regulation; or,

(20) Is otherwise determined by the Commission to be unsuitable for licensure.

(b) If a Licensee fails to renew its License and does not voluntarily surrender the License, the Commission may issue a notice of expiration of the License without further revocation proceedings.

(c) Revocation, suspension, cancellation, surrender, or expiration of a License shall not impair or affect the obligation of a preexisting lawful contract between the Licensee and any Person.

(d) Revocation, suspension, cancellation, surrender, or expiration of a License shall not affect civil or criminal liability for acts committed before the revocation, suspension, cancellation, surrender, or expiration. Nothing in this Section precludes the Commission from any enforcement action described under Section 10.

4.12 Procedure for Suspension or Revocation.

(a) Upon reasonable basis for belief that a violation of the Ordinance has occurred, the Commission may either undertake an investigation of the Licensee, or serve upon such Licensee a notice of violation.

(b) Unless exigent circumstances exist, any notice of violation or notice of investigation, suspension, or revocation shall state the reason for the notice, and allow the Licensee to request a hearing pursuant to Section 9.

4.13 Non-Transferable or Assignable License. A License issued pursuant to the Ordinance is not transferable or assignable unless approved in writing by the Commission.

4.14 Jurisdiction.

(a) Jurisdiction over Members. The Tribe has jurisdiction over all Tribal Members and Indians.

Case 1:25-cv-00489-BBC    Filed 09/08/25    Page 9 of 26    Document 24-1

(b)     Jurisdiction over Tribal Business Entities.  The Tribe has jurisdiction over all business entities organized under Tribal law.

(c)     Jurisdiction over non-Members.  The Tribe has jurisdiction over non-Members (i) that are within the Tribe's Indian lands, (ii) who enter into consensual relationships (e.g., commercial dealings, contracts, leases, or other arrangements) with the Tribe, its arms and instrumentalities, businesses organized under Tribal law, and its Members; (iii) who threaten the Tribe's political integrity, economic security, or health and welfare; and/or (iv) as delegated by Congress.  Without limiting the foregoing:

(1)     Obtaining a License pursuant to the Ordinance is consent by the Licensee or Applicant to the Tribe's jurisdiction and consent to the Tribe's exercise of jurisdiction over the Licensee in any action arising out of the Licensee's activities whether the Licensee or the Licensee's activities are on or off-reservation.  The Commission is specifically granted authority under this Ordinance to act on behalf of the Tribe to exercise jurisdiction over Licensees.

(2)     Obtaining any Consumer Financial Services, Loan, or other product or service authorized by this Ordinance or any duly promulgated regulation invokes and is consent to the Tribe's jurisdiction for the application of Tribal law, including, but not limited to, the Ordinance, for all purposes related to the consensual relationship.

(d)     Jurisdiction over Consumer Financial Services.  The Tribe has jurisdiction over all Consumer Financial Services authorized by this Ordinance and by promulgated regulations. The Commission is specifically granted authority under this Ordinance to act on behalf of the Tribe to exercise jurisdiction over those engaging in Consumer Financial Services from the Tribe's Indian lands.

(e)     Jurisdiction over Indian lands.  The Tribe has jurisdiction over Indian lands as provided for in the Tribe's Constitution.

## SECTION 5.  LICENSEES

5.1     Compliance in General.  Licensees of any type shall at all times comply with the provisions of this Ordinance, rules and regulations promulgated pursuant to this Ordinance, and all other Tribal and federal laws as applicable.

5.2     Federal Consumer Protection Laws.

(a)     A Licensee shall conduct business in a manner that complies with Section 5.1 above and with all applicable federal and Tribal consumer protection law, including, but not limited to: The Dodd-Frank Wall Street Reform and Consumer Protection Act, 12, U.S.C. § 5301 *et seq.*, including the Consumer Financial Protection Act, 12 U.S.C. § 5481 *et seq.*, and, the restrictions on Unfair, Deceptive, or Abusive Acts or practices, 12 U.S.C. § 5531, *et seq.*;the Consumer Credit Protection Act, 15 U.S.C. Chapter 41,

Case 1:25-cv-00489-BBC     Filed 09/08/25     Page 10 of 26     Document 24-1

including the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, 12 C.F.R. § 226; the Fair Credit Billing Act, 15 U.S.C. § 1666a; the Consumer Leasing Act, 15 U.S.C. § 1667 *et seq.*; 12 CFR § 213 *et seq.*; the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, 12 C.F.R. § 222; the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.*, 15 C.F.R. § 202; the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, 16 C.F.R. § 901; and, the Electronic Fund Transfer Act, 15 U.S.C. § 1693 *et seq.*, 12 C.F.R. § 205. Also, the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801 *et seq.*, 16 C.F.R. §§313 and 314; the Electronic Signatures in Global and National Commerce Act, 15 U.S.C. § 7001 *et seq.*; the Controlling the Assault of Non-Solicited Pornography and Marketing Act, 15 U.S.C. § 7701, *et seq.*; the Military Lending Act, 10 U.S.C § 987, 32 C.F.R. § 232; the Servicemembers' Civil Relief Act, 50 U.S.C. App. § 501 *et seq.*; the Telephone Consumer Protection Act, 47 U.S.C. § 227, 47 CFR § 64.1200 *et seq.*; the Bank Secrecy Act, 31 U.S.C. § 5311 *et seq.*, 12 U.S.C. §§ 1829b, 1951-1959; the Anti-Money Laundering Act, 18 U.S.C. § 1960; and, the Telemarketing Sales Rule, 16 C.F.R. § 310.

(b)     This Ordinance does not waive any Licensee defenses, legal position, or serve as consent by any Licensee related to the applicability of federal laws to the Tribe, the Commission any Licensee, or any Consumer Financial Services.

5.3     <u>Prohibited Acts by Licensees.</u>

(a)     A Person shall not engage in the business of Consumer Financial Services subject to this Ordinance without first obtaining a License pursuant to this Ordinance. A Person that engages in Consumer Financial Services without a License violates this Ordinance.

(b)     A Licensee shall not:

(1)     Engage in any Consumer Financial Services other than those of which it is authorized to conduct under its License.

(2)     Assess any interest, fee, or charge that is greater than any applicable limitation, if any, prescribed in this Ordinance or promulgated regulation.

(3)     Use or cause to be published or disseminated any advertisement or marketing campaign that contains false, misleading, or deceptive statements or representations.

(4)     Engage in unfair, deceptive, abusive, or fraudulent practices, or unfair or deceptive advertising in connection with a Loan. A Licensee violates the requirements of this Ordinance by engaging in any act that limits or restricts the application of this Ordinance.

(5)     Make any Loan or offer any Consumer Financial Services unless the Licensee has made a determination of the Consumer's ability to repay.

(6)     Originate any Loan or approve any Loan agreement outside the Tribe's Jurisdiction.

Case 1:25-cv-00489-BBC     Filed 09/08/25     Page 11 of 26     Document 24-1

5.4     Books, Accounts and Records; Examinations, Costs.

(a)     Licensee Books, Accounts, and Records.  A Licensee shall maintain all books, accounts, and records that the Commission reasonably requires.  Each Licensee shall:

(1)     Ensure that the books, accounts, and records are accurate and sufficiently detailed to comply with the Ordinance and all applicable Tribal and federal laws.

(2)     Maintain the books, accounts, and records separately from any other business in which the Licensee is engaged and shall retain the books, accounts, and records for at least three years.

(b)     Examinations and Costs.  The Commission may examine or cause to be examined any Licensee as the Commission considers necessary which shall be no less than an annual basis.  In conducting such examination, the Commission may examine the premises, books, accounts, and records to determine if the Licensee has complied with this Ordinance and any promulgated regulations.  The Licensee shall pay the cost of the examination.

(c)     Tribal Records.  All books, accounts, records, agreements, reports and audits, communications, and other documents held by a Licensee and related to Consumer Financial Services authorized by this Ordinance are records of the Tribe.

5.5     Compliance Management System.  Each Lender shall maintain a compliance management system to ensure compliance with the requirements of this Ordinance and applicable federal and Tribal law.

5.6     Annual and Monthly Reports.  Each Lender shall file an annual report with the Commission that contains information specified by the Commission.  The Commission may require monthly reports that contain information specified by the Commission.

5.7     Technology and Data Security.  Each Lender shall secure all information technology hardware and data using such levels of protection and technology that is commiserate with recommended data security practices of the industry.  Each Lender shall have all technology and data security audited annually or more often if necessary.

5.8     Copy of Ordinance.  Each Licensee shall have a copy of this Ordinance and any promulgated regulations readily available for inspection by any Person at each authorized physical location and on each website.

## SECTION 6.  AGREEMENTS; AUTHORIZED TRANSACTIONS& PRODUCTS

6.1     All Licensees must ensure that their Consumer Financial Services, Loans, and other transactions originate from the Tribe's jurisdiction.  All loan agreements and authorized transactions shall be consummated from the Tribe's jurisdiction, with the last act of any

Case 1:25-cv-00489-BBC     Filed 09/08/25     Page 12 of 26     Document 24-1

Consumer Financial Services, Loan, or other transaction occurring from the Tribe's jurisdiction.

6.2    Required Notices and Disclosures.

(a)    Borrower's Rights and Responsibilities.  Each Loan Agreement must contain a notice and disclosure that advises the Consumer of their rights.  The notice and disclosures must be in a conspicuous and prominent place within the Loan Agreement and in bold and capitalized type size no smaller than type size used elsewhere in the Loan Agreement, and contain, at a minimum, the following information:

(1)    Identify that the Lender is wholly-owned economic instrumentality of the Tribe, formed and operates pursuant to Tribal law for the express purpose of the economic development and betterment of the Tribe;

(2)    The Lender and the Tribe are immune from suit in any court unless the Tribe expressly and unequivocally waives its sovereign immunity;

(3)    The Lender is regulated and licensed by Tribal law and the Commission;

(4)    The Loan is made within the Tribe's jurisdiction and governed by Tribal law and applicable federal law;

(5)    The Loan may have a high interest rate and is not intended as a long-term financial solution;

(6)    Alternative forms of credit may be less expensive;

(7)    The Loan is not governed by the laws of any State and that State law may offer interest rate limits and other consumer protections that are inapplicable to the Consumer, the Loan, and the Lender;

(8)    Consumer's signature and acceptance of the Loan indicates:

(A)    Consumer understands that it is in the Consumer's best interests to evaluate their ability to repay the Loan;

(B)    Consumer has had the opportunity to consult an independent financial counselor;

(C)    Consumer understands that the Consumer and not the Lender, is responsible to evaluate the Consumer's financial options;

(D)    Consumer has read and understands the terms of the loan, including the interest rate;

(E)    Consumer understands the inapplicably of state law;

(F) Consumer understands that the Loan is made in accordance with the terms of a Loan Agreement that is governed by Tribal law and that, by signing the Loan Agreement and accepting the Loan, the Consumer is consenting to the Tribe's jurisdiction;

(G) Consumer consents to the dispute resolution process provided in the Loan Agreement;

(H) Consumer has provided current and accurate information related to the Consumers' employment, income, credit, and asset history;

(I) Consumer is able to repay the loan according to the terms of the Loan Agreement.

(b) Right to Rescind.

(1) Time to Rescind. A Consumer shall have the right to rescind the Loan Agreement for at least two business days following the disbursement of funds and otherwise as according to the terms of the loan agreement.

(2) Repayment. Upon rescission, the Consumer must repay the full amount of the Loan but shall not be required to pay any pre-assessed fee or other fees or costs as set forth in the Loan Agreement. A Consumer must provide the Lender with notice of such rescission within the timeframe established by this Ordinance.

(3) Right to Rescind Notice. Each Loan Agreement shall provide notice to the Consumer in a conspicuous and prominent place on each Loan Agreement in bold, capitalized type size no smaller than type size used elsewhere in the Loan Agreement, of the Consumer's right to rescind the Loan Agreement.

6.3 Commission Regulations. The Commission may promulgate regulations to control the notices and disclosures required by this Ordinance.

6.4 Authorized Consumer Financial Services and Products.

(a) Fully Amortizing Installment Loans. As applicable, a Loan Agreement shall require that the Consumer pay periodic payments of an amount that the Lender and Consumer predetermine and memorialize in their Loan agreement. Lender may apportion those payments to account for principal and interest according to the terms of the Loan Agreement. In no event shall a Loan include a balloon payment at maturity.

(b) Fees and charges. Except as otherwise specified in this Ordinance, the following fees and charges shall apply:

(1) Interest Rate and Fees. Except as otherwise specified in this Ordinance, a Loan Agreement may provide for the interest rate or the fee equivalent as agreed

Case 1:25-cv-00489-BBC    Filed 09/08/25    Page 14 of 26    Document 24-1

upon by the parties.

(2) Late Charges.A Loan Agreement may provide for a late payment charge not in excess of an amount established by the Commission for each late payment. Only one late payment fee may be collected for each late payment.

(3) Dishonor Item Fees.A Loan Agreement may provide that upon return of a payment device to the Lender, the Lender may charge a fee not in excess of an amount established by the Commission for each return item. Only one fee may be collected for each returned payment notwithstanding multiple presentations of payment.

(c) No oral agreements. A Loan Agreement shall provide that it represents the entire agreement of the parties and may not be contradicted by evidence of prior or contemporaneous oral agreements of the parties. Such provisions are enforceable and disallow evidence of prior or contemporaneous oral agreements.

(d) Enforcement of rights and remedies. The Loan Agreement shall provide that in any proceeding in which a Lender is a party and with respect to any transactions with a Consumer under this Ordinance, the proceeding is governed by this Ordinance, promulgated regulations, and applicable federal law. Any claims or defenses whatsoever asserted by or on behalf of a Consumer shall be subject to the dispute resolution process and jurisdiction agreed upon by the parties in their Loan Agreement.

(e) The Commission may promulgate regulations to authorize and control additional Consumer Financial Services and products.

## SECTION 7. TRIBAL CONSUMER FINANCE SERVICES REGULATORY COMMISSION

7.1 Establishment and Purpose. The Tribal Council hereby establishes the Commission as an independent governmental subdivision of the Tribe with autonomy and authority to regulate and enforce this Ordinance. The Commission is charged with the implementation of the Ordinance to ensure fair and equitable treatment of Consumers and to enforce compliance of the Ordinance by Licensees. The Tribal Council created the Commission to operate on behalf of the Tribe for the benefit of the Tribe, its members, and to protect Consumers.

7.2 Location and Place of Business. The Commission may maintain its headquarters principal place of business within the Tribal offices. The Commission may establish other places of business in such other locations as the Commission may from time to time determine to be in the best interest of the Tribe.

7.3 Duration. The Commission shall have perpetual existence and succession in its own name, unless dissolved pursuant to Tribal law.

7.4 Tribal Actions. The Tribe reserves to itself the right to bring a lawsuit against any Person or governmental entity, on behalf of the Tribe, the Commission, or any Lender whenever the

Case 1:25-cv-00489-BBC    Filed 09/08/25    Page 15 of 26    Document 24-1

Tribe deems it necessary to protect the sovereignty, rights, and interests of the Tribe, the Commission, a Lender, or a Consumer.

7.5     Sovereign Immunity.

(a)     Immunity from Suit. The Commission and any Lender possess all the rights, privileges, and immunities of the Tribe as allowed under Tribal and federal law, including sovereign immunity from unconsented judicial or administrative process.

(b)     No Waiver. Nothing in this Ordinance shall be deemed or construed to be a waiver of sovereign immunity of the Tribe, the Commission, or any Lender.

(c)     Waiver of Sovereign Immunity of the Commission. The Commission may only waive its sovereign immunity by majority vote of the Commissioners, confirmed by resolution, which then must be approved by the Tribal Council.

(1)     Limited Nature to Waiver. Waivers of sovereign immunity must be specific and limited, including limits as to duration, venue, grantee, transaction, property or funds, if any, of the Commission.

(2)     Enforcement Actions and Immunity. A Licensee's sovereign immunity shall not prevent, either by operation or interpretation, the Commission's investigations and enforcement actions described in this Ordinance. Moreover, a Licensee's sovereign immunity shall not prevent the Tribal Council from taking enforcement action against Licensee when the Commission requests or when the Tribal Council approves such action through a formal resolution.

7.6     Sovereign Immunity of the Tribe.

(a)     Immunity from Suit. With respect to the existence and activities of the Commission, all inherent sovereign rights of the Tribe as a federally-recognized Indian tribe are hereby expressly reserved, including sovereign immunity from unconsented judicial or administrative process.

(b)     No Waiver or Consent to Jurisdiction. Nothing in this Ordinance nor any action of the Commission shall be deemed or construed to be a waiver of sovereign immunity of the Tribe.

7.7     Assets of the Commission. The Commission shall have only those assets specifically assigned to it by the Tribal Council, acquired in its name by the Tribe, or acquired by the Commission on its own behalf. No activity of the Commission or any indebtedness incurred by it shall implicate or in any way involve any assets of tribal members or the Tribe not assigned in writing to the Commission.

7.8     Commissioner; Compensation, Duties.

Case 1:25-cv-00489-BBC     Filed 09/08/25     Page 16 of 26     Document 24-1

(a)　Commissioner; Term of Office. The Commission shall be governed by Commissioners appointed by the Tribal Council. The Tribal Council may change the number of Commissioners by Resolution as it deems necessary. The Tribal Council shall determine a Commissioner's term of office.

(b)　Chairman. Unless designated by the Tribal Council, the Commission shall select a Chairman by majority vote.

(c)　Compensation. The compensation of the Commissioner shall be established from time to time by the Tribal Council.

(d)　Duties. The Commission shall have the following responsibilities:

    (1)　Oversee and have responsibility for the day-to-day operations of the Commission, including supervision of Commission employees;

    (2)　Supervision of Licensees under the Ordinance; and

    (3)　Exercise the powers enumerated in Section 7.13 as needed and at its discretion.

(e)　Commissioner Qualifications. To be qualified for appointment as a Commissioner, a candidate shall meet the following qualifications:

    (1)　The candidate shall have expertise, experience, education or a combination thereof in financial services, finance, management, business, governmental regulation, law, and/or Tribal policy.

    (2)　The candidate shall be at least twenty-one (21) years of age and show proof of High School Diploma or equivalent.

    (3)　No person shall serve as Commissioner if:

        (A)　The person's prior activities, criminal record, if any, or reputation, habits or associations:

            i.　Pose a threat to the public interest; or

            ii.　Threaten the effective regulation and control of financial services; or

            iii.　Enhance the dangers of unsuitable, unfair, or illegal practices, methods, or activities in the conduct of financial services.

        (B)　The person has been convicted of or entered a plea of no contest to any crime involving breach of trust or dishonesty in any jurisdiction; or

        (C)　The person, or any member of his or her Immediate Family, has a partnership or other direct monetary or financial interest in the conduct of

Case 1:25-cv-00489-BBC　　Filed 09/08/25　　Page 17 of 26　　Document 24-1

any Licensee or is in privity with a Licensee or one of its agents, contractors, or sub- contractors; or if the candidate has any other personal or legal relationship that places him/her in a conflict of interest with any Licensee.  For purposes of this subsection, "Immediate Family" includes spouse or significant other, parents, children, and siblings.  Ownership of a Licensee by virtue of membership in the Tribe is not a per se monetary or financial interest in the conduct of any Lender.  A candidate must disclose any potential conflict caused through an Immediate Family member.  After disclosure, a conflict may be waived by the Tribal Council provided that appropriate safeguards are put in place to ensure impartiality.

(D)    The person would not comply with Section 7.11 if appointed to the Commission.

7.9    Meetings.  The Commission shall hold meetings as necessary to fulfill its duties.  The Commission shall hold or participate in such meetings with the Tribal Council as are necessary and appropriate.  The Commission may meet in an Executive Session when necessary to protect confidentiality.

7.10    Prohibited Acts.  Commissioner and Commission employees shall not do any of the following with respect to any Licensee:

(a)    Be indebted, either directly or indirectly, as borrower, accommodation endorser, surety, or guarantor to any Licensee.

(b)    Be an officer, director, or employee of any Licensee.

(c)    Be interested in, directly or indirectly, or receive from any Licensee or any officer, director, or employee of any Licensee any salary, fee, compensation, or other valuable thing by way of gift, donation, credit, or compensation for services or otherwise; *except* that a Commissioner or Commission employee is permitted to receive a pro-rata share of revenue that has been generated by a Lender and is distributed among all eligible Tribal members by virtue of membership in the Tribe.

7.11    Removal of Regulatory Commissioner; Vacancy.

(a)    Removal.  A Commissioner may be removed by the Tribal Council for the following reasons: serious inefficiency, neglect of duty, malfeasance, misfeasance, nonfeasance, misconduct in office, or for any conduct which threatens the honesty and integrity of financial services or the Commission or violates the letter or intent of this Ordinance.  Before removal, such Commissioner shall be (a) granted a hearing before the Tribal Council, and (b) given a written notice of the specific charges against him or her at least ten (10) Business Days prior to such hearing.  Any basis for removal must be substantiated by a preponderance of the evidence.  A Commissioner subject to removal will be given an opportunity to provide evidence rebutting the grounds for their proposed removal before the removal is considered.  A Tribal Council decision to remove a Commissioner is not appealable.

Case 1:25-cv-00489-BBC     Filed 09/08/25     Page 18 of 26     Document 24-1

(b) <u>Vacancy</u>. If there is a vacancy on the Commission, the Tribal Council may appoint another qualified Tribal member to fill the position. The term of office of the person appointed to fill the vacancy shall be for the balance of the unexpired term for the position.

7.12 <u>Powers of the Commission</u>. The Commission has the power to discharge all duties imposed by this Ordinance and its associated regulations including but not limited to:

(a) Receive and act on complaints, take action designed to obtain voluntary compliance with this Ordinance, or commence proceedings on its own initiative.

(b) Counsel Licensees on their rights and duties under this Ordinance.

(c) Establish financial literacy programs.

(d) Make studies appropriate to effectuate the purposes and policies of this Ordinance and make the results available to the public.

(e) To promulgate, adopt, and enforce regulations and rules furthering the purpose and provisions of this Ordinance.

(f) To examine, inspect, or investigate the place of business, equipment, facilities, tangible personal property and the books, records, papers, vouchers, accounts, documents and financial statements of any Licensee or Person engaging or participating in, or suspected to be engaging or participating in, Consumer Financial Services to ensure compliance with this Ordinance or any order of the Commission; to determine whether any Licensee has engaged, is engaging or is about to engage in any act, practice or transaction that constitutes an unsafe or unsound practice or violation of this Ordinance or any order of the Commission; or, to aid in adopting rules or regulations pursuant to this Ordinance.

(g) To establish procedures designed to permit detection of any irregularities, fraud, or the like.

(h) Upon prior explicit resolution and approval of the Tribal Council, to employ such advisors as it may deem necessary at rates to be set by the Commission in its reasonable discretion. Advisors may include, but are not limited to, lawyers, accountants, law enforcement specialists, and financial services professionals.

(i) To accept, review, approve, or deny any Application for a License, including conducting or arranging for background investigations of all Applicants.

(j) To examine under oath, either orally or in writing, in hearings or otherwise, any Licensee or Person with respect to any matters related to this Ordinance and to compel by subpoena the attendance of witnesses and the production of any books, records, and papers with respect thereto. Upon refusal to appear or produce, the Commission may

Case 1:25-cv-00489-BBC    Filed 09/08/25    Page 19 of 26    Document 24-1

apply to a court of competent jurisdiction to compel appearance or production.

(k)　　To discipline any Licensee for violation of this Ordinance by ordering immediate compliance, issuing fines and sanctions, and suspending or revoking any License after affording a hearing and due process.  If a Person fails to pay fines and sanctions, the Commission may impose a lien in the amount of such fine and costs upon all assets and property of such Person within the jurisdiction of the Tribe and may be recovered in a civil action by the Commission.  Failure of the Person to pay such fine and costs shall constitute a separate violation of the Ordinance.

(l)　　To sue in courts of competent jurisdiction within the United States; provided that no suit shall be brought by the Commission without the prior explicit written approval of the Tribal Council.

(m)　　To arbitrate, compromise, negotiate, or settle any dispute to which it is a party relating to the Commission's authorized activities, subject to any approval of the Tribal Council that may be required by the Tribal Council.

(n)　　To adopt a schedule of fees for: the processing, issuance, and renewal of Licenses, including fees or charges associated with conducting background checks; for reasonable examinations of Lenders; and for services rendered relating to transcripts and the furnishing or certifying of copies of proceedings, files, and records and to impose the forgoing fees as applicable.

(o)　　To establish and maintain such bank accounts as may be necessary or convenient.

(p)　　To make such findings as may be necessary to implement the Commission's duties and powers, with such findings to be given deference as the legally binding findings of a governmental entity.

(q)　　To enter cooperative arrangements and to coordinate enforcement activity with other Tribal, Federal, or State regulatory agencies.

(r)　　The Commission is prohibited from managing the day-to-day operations of a Licensee.

7.13　　Annual Budget.  The Commission shall prepare an annual operating budget for all Commission activities and present it to the Tribal Council no less than thirty (30) Business Days before the commencement of each operating year.

7.14　　Commission Regulations.

(a)　　Regulations necessary to carry out the implementation and orderly performance of the Commission's duties and powers shall include, but shall not be limited to, the following:

(1)　　The making of findings or other information required by or necessary to

Case 1:25-cv-00489-BBC　　Filed 09/08/25　　Page 20 of 26　　Document 24-1

implement this Ordinance;

(2)    Interpretation and application of this Ordinance, as may be necessary to enforce the Commission's duties and exercise its powers;

(3)    A regulatory system for overseeing Consumer Financial Services, including accounting, contracting, management and supervision;

(4)    The conduct of inspections, investigations, hearings, enforcement actions and other powers of the Commission authorized by this Ordinance; and

(5)    Specification of the amount and the schedule of applicable Licensing and examination fees that shall be imposed by the Commission.

(b)    <u>Promulgation of Regulations</u>. The Commission may promulgate regulations as follows:

(1)    The Commission may propose a regulation at any time. A Licensee may propose a regulation by submitting a written request and draft of the proposed regulation to the Commission.

(2)    Before promulgating any regulation, the Commission will notify the Tribe and all Licensees of the proposed regulation by publishing notice on the Commission website or by other means determined to ensure timely notice. Such notification will include a description of the regulation and the reason for its considered implementation.

(3)    After notice is sent, the Commission will allow a reasonable time for any Licensee to submit written comments on the proposed regulation that support, oppose, or suggest amendments.

(4)    After the comment period has expired, the Commission will either: amend the proposed regulation and allow a new comment period; promulgate and publish the proposed regulation with a separate written response to any comments; or, decline to promulgate the regulation. The Commission shall send notice to the Tribe and Licensees of its decision.

(5)    The Tribal Council may promulgate or rescind any regulation at any time by majority vote. The Tribal Council is in no way bound by this Section.

(6)    Only regulations promulgated by the Commission in accordance with this procedure or by the Tribal Council will be enforceable by the Commission.

7.15    <u>Regular Reports to the Tribal Council</u>. The Commission shall file regular reports with the Tribal Council updating the Tribal Council on issues, if any, related to Licensees and providing additional information and comment that it deems necessary to keep the Tribal Council fully informed as to the status of the Commission's activities.

7.16    Tribal Records.All books, accounts, records, agreements, reports and audits, communications, and other documents held by the Commission are records of the Tribe.

7.17    Public Access.  The Commission shall make this Ordinance, promulgated regulations, licenses, and other information as determined appropriate for publication available to the public on the Commission website, by other public posting, or directly to the public upon request.

## SECTION 8.  CONSUMER COMPLAINT PROCEDURE.

8.1    General Principles.  The Tribe values its Consumers and will timely address questions, concerns, issues, and complaints raised by Consumers in a fair and orderly manner.

8.2    Consumer Complaint Procedure.

(a)    The Commission shall establish an intake process to receive and direct Consumer complaints to the appropriate Licensee.

(b)    Within 30 days of receipt of any Consumer complaint, the Licensee shall attempt to resolve the complaint and inform the Consumer in writing of a proposed resolution.  A Licensee may have longer than 30 days upon good cause shown that efforts to resolve the complaint are underway.

(c)    As authorized by Section 9, the Commission may investigate and review any Consumer complaint in any manner that it chooses, including but not limited to document review, interviews, compelling sworn statements, conducting depositions, and other means of obtaining information.  In each instance, the Licensee must cooperate with the Commission and must provide such information and documents as the Commission deems necessary.

(d)    After reviewing the Consumer complaint, investigation results, and any other evidence, the Commission shall communicate its decision on the complaint to the Licensee, and may, when appropriate, issue a Notice of Violation under Section 9.

8.3    Final Decision. Unless otherwise authorized by promulgated regulation or by the Tribal Council, the Commission's decision with respect to a complaint is final.

8.4    Regulations.  The Commission may promulgate regulations to further govern the Consumer complaint procedure.

## SECTION 9.COMMISSION INVESTIGATIONS; HEARINGS.

9.1    Investigations, Right of Entrance.

(a)    Investigations.  The Commission may investigate and examine the operation and premises of any Licensee or Person engaging in, or suspected to be engaging in,

Consumer Financial Services or other related activity.

    (1)    In undertaking such investigations, the Commission may request the assistance of federal or local law enforcement officials, legal counsel and/or other third parties.

    (2)    In conducting such investigation, unless exigent circumstances exist, the Commission shall make no order or final decisions without affording any affected party notice and a hearing pursuant to this Ordinance.

    (3)    This power to investigate does not authorize the Commission to manage the day-to-day operations of a Licensee.

    (4)    All investigations, information obtained during an investigation, and findings are confidential and remain confidential unless or until disclosed by the Commission, including disclosure by notice of violation or enforcement action, or by the Tribal Council.

(b)    <u>Right of Entrance</u>.  The Commission and duly authorized employees or agents of the Commission may enter upon any premises of any Licensee during the Licensee's regular business hours, or of any Person engaging in or suspected to be engaging in Consumer Financial Service sor other related services, for the purpose of making inspections and examining the accounts, books, papers, and documents related to Consumer Financial Services or other related services related.

(c)    <u>Aid to Entry</u>.  The staff of the Licensee or Person engaging in or suspected to be engaging in Consumer Financial Services or other related services related give every reasonable aid to the Commission and to any properly authorized officer or employee.

9.2    <u>Notice and Opportunity to Cure; Due Process; Hearings; Examiner</u>.

(a)    <u>Notice of Violation</u>.  If the Commission believes that any Licensee or Person has engaged in or is about to engage in any act or practice constituting a violation of the Ordinance or the Commission's promulgated regulations, the Commission may issue a notice of violation, which may include a cease and desist order, and provide the violator an opportunity to cure the violation.

    (1)    <u>Notice</u>.  Upon discovery of a violation, the Commission shall promptly serve a notice with an explanation of the reasons the notice was issued, a timeframe for compliance or to otherwise cease any violation, and detail any consequences or enforcement actions for noncompliance.

    (2)    <u>Request for Hearing</u>.  A Licensee or Person may request a hearing, in writing, within fifteen (30) Business Days after the notice was issued.

    (3)    Upon receipt of a written request for a hearing, the Commission shall set a hearing within a reasonable time or at an agreed upon time and send notice to

Case 1:25-cv-00489-BBC    Filed 09/08/25    Page 23 of 26    Document 24-1

the requestor. A notice of hearing shall specifically identify the issues to be heard, and the date, time, and location at which a hearing shall be conducted.

(4) If a hearing is not requested within fifteen (30) Business Days after a notice is served, the Commission may issue an order confirming the violations in the notice and impose any applicable enforcement action, which shall remain in effect until modified or vacated by the Commission.

(5) Vacatur or Modification of Cease and Desist Order. The Commission may vacate or modify a notice of violation or an order if it finds that the conditions supporting the notice or order have changed or that it is otherwise in the public interest to do so.

(b) Hearing. At the hearing, the Commission shall serve as an adjudicative panel and preside over the hearing.

(1) The affected parties shall be provided the opportunity to present oral or written testimony and shall have an opportunity to cross-examine opposing witnesses.

(2) The hearing shall be governed in all respects in accordance with Tribal law and Commission regulations.

(3) No Commissioner may be called to testify at a hearing conducted under this section.

(4) Examiner. If necessary, the Commission shall identify an examiner to represent the Commission at a hearing, including appointing an examiner qualified in the law or possessing knowledge or expertise in the subject matter of the hearing. Any such appointment shall include the scope of the delegation and be disclosed to the affected parties at least ten (10) Business Days before the hearing.

(c) Decision. The Commission shall issue a written decision to all affected parties within thirty (30) Business Days after the hearing. The Commission may confirm or withdraw any notice of violation, remove or extend an order, confirm the denial of an Application, suspend or revoke a License, and order fines, penalties or other relief. For Consumer disputes, the Commission may grant or deny any relief as the Commission deems appropriate.

## SECTION 10. ENFORCEMENT

10.1 Jurisdiction. In addition to Section 4.14, the Commission shall have jurisdiction over all violations of this Ordinance and with respect to any conduct governed in this Ordinance or with respect to any claim arising from a transaction subject to this Ordinance.

10.2 Guidelines. When imposing any administrative remedy or penalty allowed under this

Case 1:25-cv-00489-BBC    Filed 09/08/25    Page 24 of 26    Document 24-1

Ordinance, the Commission shall take into account the appropriateness of the remedy or penalty with respect to the size of the financial resources and good faith of the violator, the extent to which the violation was intentional, the gravity of the violation, the history of previous violations, and such other matters as justice may require.

10.3    Civil Violations.  Any Person who violates or fails to comply with any provision of this Ordinance or who fails or neglects to comply with any final order of the Commission may be charged with a violation and given due process pursuant to Section 9.  If the Person is found to have committed a violation, in addition to equitable remedies, the Person may be required to pay a civil fine to the Commission not to exceed an amount allowed by any applicable Tribal or federal law.A violation or series of violations related to the same act or omission may be treated as one violation.

   (a)    A Licensee found responsible for a violation pursuant to this Section may also be subject to revocation of its License.

   (b)    If an officer or agent of a Licensee participates in a violation of this Ordinance, then the Commission may immediately revoke the Licensee's License.

   (c)    If an officer or agent of a Vendor participates in a violation of this Ordinance, the Commission may immediately ban the Vendor from operating within the Tribe's jurisdiction and may require other Licensees working with such Vendor to show cause why they should not be held accountable and disciplined for the Vendor's conduct.

10.4    Cumulative Fines.  All civil fines accruing under this Ordinance shall be cumulative and a suit for the recovery of one fine shall not bar or affect the recovery of any other fine, judgment, penalty, forfeiture, or damages nor bar the power of a court of competent jurisdiction to enter an order of contempt, nor bar any criminal prosecution against any officer, director, agent, or employee of any Licensee or any other Person.

10.5    Purpose of Civil Penalties.  The civil fines imposed under this Ordinance are intended to be remedial and not punitive.  Such fines are designed to compensate the Tribe for the damage caused to its peace, security, economy, and general welfare, while also compensating the Tribe for harm caused by violations of this Ordinance or the actions of a Licensee.

10.6    Civil Action for Penalties.  In enforcing the civil violations under this Ordinance, with express approval by the Tribal Council, the Commission may proceed against a Person by civil complaint in a court of competent jurisdiction.

10.7    Seizure and Forfeiture of Property.  Property of a Licensee or Person utilized in violation of this Ordinance shall be subject to seizure and forfeiture by order of the Commission pursuant to such implementing regulations as the Commission shall promulgate.

10.8    Payment of Fines and Penalties.Civil penalties, administrative fines, and other fines or penalties provided for in this Ordinance shall in all cases be paid directly to the Commission. The Commission shall deposit such proceeds into an account or fund designated by the Tribal Council.

Case 1:25-cv-00489-BBC    Filed 09/08/25    Page 25 of 26    Document 24-1

10.9    Nothing in this Section precludes the Commission from any suspension or revocation action authorized under Section 4.12.

Case 1:25-cv-00489-BBC    Filed 09/08/25    Page 26 of 26    Document 24-1