# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
### Green Bay Division

ALICE GILL, RACHEL BUTLER,
MORGAN RICE, PATREESE WILLIAMS,
JESSE WILSON, GLORIA APPIAH,
DOROTHEA FULMORE, DARLENE
MOORE, JEROME COLE, RUBEN
VILLANUEVA, JOSE ROSARIO,
ANDREW FUENTES, SPENCER
THOMPSON, JOSEPH GREENWOOD,
KATHLEEN ZACCHEO, JEREMY
RICKABAUGH, and NICOLE MATOS, *on
behalf of themselves and all individuals
similarly situated*,

Court File No. 1:25-cv-489

Judge Byron B. Conway

        Plaintiff,

   v.

SOAREN MANAGEMENT, LLC, *et al.,*

        Defendants.

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY, OR IN THE ALTERNATIVE, TO DISMISS UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6)

# TABLE OF CONTENTS

I.  ARGUMENT ......................................................................................................... 1

   A.  PLAINTIFFS' CLAIMS MUST BE COMPELLED TO ARBITRATION .................. 1

      1.  Plaintiffs Fatally Ignore the Delegation Clause in the Loan Agreements ............... 2

      2. Plaintiffs Prematurely Raise Choice-of-Law Arguments .......................................... 4

      3.  Plaintiffs Misconstrue Prospective Waiver and its applicability to State Law Claims, and the Loan Agreements ...................................................................................... 8

   B.  THE COURT LACKS SUBJECT MATTER JURISDICTION ................................. 14

      1.  Sovereign Immunity Bars Prospective Relief ........................................................... 14

      2.  Sovereign Immunity Bars Individual Capacity Claims Seeking Monetary Relief  16

      3.  Plaintiffs' Claims are Barred by Legislative Immunity ........................................ 18

   C.  PLAINTIFFS' COMPLAINT FAILS TO STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED .................................................................................................. 18

      1.  Plaintiffs' RICO claims Must be Dismissed ............................................................ 18

      2.  No Benefit Conferred to Support Unjust Enrichment Claim ................................ 19

      3.  Plaintiffs' Declaratory Judgment Claim Fails as a Matter of Law ........................ 20

II. CONCLUSION ..................................................................................................... 20

i

# I. ARGUMENT

## A. PLAINTIFFS' CLAIMS MUST BE COMPELLED TO ARBITRATION

In a continued effort to avoid arbitration at all costs, Plaintiffs spend over twelve pages of their response lodging various attacks on the Tribe's lending activities, the Loan Agreements, and the Tribe's own financial regulations—none of which change the most crucial fact that Plaintiffs agreed to the terms of the Loan Agreements. Those terms require an *arbitrator* to reach a decision on the merits of Plaintiffs' disputes based on the plain language of the Arbitration Provision and delegation clause. But even considering Plaintiffs' challenges here, they substantially fail.

First, Plaintiffs' reliance on public policy ignores the terms of the delegation provision. Second, Plaintiffs prematurely raise what they *assume* will be a choice-of-law issue in arbitration, before that issue has materialized; a tactic explicitly rejected by the Supreme Court in *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528 (1995). Plaintiffs also misconstrue and misapply the prospective waiver doctrine, as well as how it relates to the Loan Agreements, disturbing the terms of the agreements to effectively attempt an end-run around the Tribe's clearly established (and indisputable) sovereignty. Nothing in the delegation provisions prevents Plaintiffs from raising their disputes in arbitration, and the delegation clause is therefore enforceable.

Ultimately, the Tribe has a right to choose which forum will govern its agreements with consumers, just like any other sovereign state (like Wisconsin) does with regularity. In doing so, the Tribe has not waived any federal substantive rights, nor has it waived Plaintiffs' right to raise state law claims in arbitration. As such, Plaintiffs' "public policy" concerns, cannot and do not render the delegation clause within the Arbitration Provision unenforceable. Thus, the result is the same: Plaintiffs' claims must be compelled to arbitration.

1

**1.    Plaintiffs Fatally Ignore the Delegation Clause in the Loan Agreements**

Disregarding the delegation clause contained within the Loan Agreements,[1] Plaintiffs rely on a string of cases, mostly out of the Fourth Circuit, interpreting loan provisions that are entirely separate and distinct from the delegation clause in this case. In doing so, Plaintiffs argue that "to challenge an agreement's delegation clause, 'a party may rely on the same arguments that it employs to contest the enforceability of other arbitration agreement provisions.'" Opposition at 12 (citing *Fahy v. Minto Dev. Corp.*, 722 F. Supp. 3d 784, 791 (N.D. Ill. 2024) and *Hengle v. Treppa*, 19 F.4th 324, 349 (4th Cir. 2021)). Not so. The actual standard, as set forth by the United States Supreme Court, clearly establishes that "[u]nless [the nonmovant] challenge[s] the delegation provision *specifically*, we must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010) (emphasis added); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006) ("as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract.").

Indeed, federal appellate courts have interpreted *Rent-A-Center* to require more than a "mere statement" the party is challenging delegation. *See, e.g.*, *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 885 (6th Cir. 2021). Rather, "courts must look to the substance of the challenge," and the challenge fails if a party "simply recycled the same arguments that pertain to the enforceability of the agreement as a whole." *Id*. at 886. The Seventh Circuit has looked with favor to *In re StockX* when addressing challenges to the enforceability of an agreement and its

---

[1] The Loan Agreements expressly delegate to an arbitrator "all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of this Arbitration Provision, the validity and scope of this Arbitration Provision and any claim or attempt to set aside this Arbitration Provision." *See* Lierz Decl.(Dkt. 20)  Ex. C, p. 15; Ex. A, p. 16.

delegation clause specifically. *See K.F.C. v. Snap Inc.*, 29 F.4th 835, 838 (7th Cir. 2022).

Plaintiffs' argument here focuses on the Loan Agreements' interest rates and governing law provisions, including the governing law provision contained in the overall agreement, as well as the Arbitration Provision-specific governing law provision. Opposition (Dkt. 24) 1, 4, 9–10. Plaintiffs, however, fail to make a single mention or citation to the at-issue delegation clause in the Loan Agreements, and instead attempt to liken the governing law provisions to that of *Dillon*, *Fahy*, and the arbitration provisions to that of *Fahy* and *Hengle* to summarily conclude prospective waiver. Notwithstanding that the governing law and arbitration provisions are materially different between the Loan Agreements and the likes of *Dillon*[2] and *Hengle*[3], and that *Fahy* is otherwise distinguishable, a mere mention of an arbitration provision in *other* cases that contain a delegation clause is not enough to challenge the delegation clause *here*. *See Rent-A-Ctr.,* 561 U.S. at 72 (finding a proper challenge to delegation requires "specific" challenges to the delegation clause itself). In fact, such arguments have been explicitly rejected as effectively transforming a delegation challenge to merely a "formal, procedural requirement" requiring a party to state only that the delegation clause is invalid, in direct contrast of *Rent-A-Center*. *See Brice v. Haynes Invs., LLC*, 13 F.4th 823, 835 (9th Cir. 2021), *reh'g en banc granted, opinion vacated sub nom. Brice v. Plain Green, LLC*, 35 F.4th 1219 (9th Cir. 2022).[4] Simply, Plaintiffs failed to directly and specifically address and challenge the delegation provision in the Loan Agreements as per the

---

[2] The loan agreement in *Dillon* provided that "[t]his Agreement and the Agreement to Arbitrate are governed by [tribal law]." *Dillon*, 856 F.3d at 335.

[3] The loan agreement in *Hengle* provided that "[d]ispute[s] will be governed by the laws of the [Tribe]." *Hengle v. Treppa*, 19 F.4th at 332.

[4] The *Brice* decision was vacated as a matter of procedure only, and the Ninth Circuit's reasoning in *Brice* remains compelling and instructive here. A vacated opinion still provides helpful guidance. *Long v. Bell*, No. CIV. 04-10326, 2007 WL 4303130, at *6 (E.D. Mich. Dec. 6, 2007).

standard in *Rent-A-Center*. That failure is fatal.

The Supreme Court's clear rule in *Rent-A-Center* requires more than what Plaintiffs have given, and that rule remains in full force. A party challenging a delegation clause via contract-wide arguments must show how the claimed deficiencies *as applied to the delegation clause* render that specific agreement invalid, which Plaintiffs did not do. Because the governing law provisions challenged by Plaintiffs here are separate from the delegation provision, and because Plaintiffs have failed to provide any *specific* argument as to why the Court should ignore that language, the delegation clause must be enforced.

### 2. Plaintiffs Prematurely Raise Choice-of-Law Arguments

Although not addressing the delegation clause specifically, the crux of Plaintiffs' arguments relies on the legal farce that, once in arbitration, an arbitrator would be precluded from considering certain state and federal claims or defenses. Specifically, Plaintiffs argue "the Governing Law provision and Arbitration Provision work in tandem to convert a choice of law clause into a choice of no law clause," and that "an arbitrator would be precluded from applying state law even in deciding questions of arbitrability." Opposition at 10, 12. Not only is Plaintiffs' argument factually incorrect—as the Arbitration Provision expressly allows Plaintiffs to bring all state and federal claims in arbitration—it is also premature, irrelevant to determining whether the delegation clause is enforceable, and runs afoul of Supreme Court precedent.

It should not be overlooked that the delegation clause does not include or reference any governing law. Nor is it required to do so. "[A] valid and enforceable choice-of-law provision is not a prerequisite to determining the enforceability of a delegation provision or the 'gateway' issue of arbitrability." *Dunn*, 2024 WL 4379966, at *13. If a choice-of-law analysis was required to determine enforceability of a delegation provision the court would be improperly stepping in on the role of an arbitrator. *See id.* ("if a contract does not specify what law applies, or if the

4

contractually specified law cannot be applied, courts [would have to] engage in a choice-of-law analysis."). This is because "the choice-of-law question . . . must be decided in the first instance by the arbitrator." *Id*. (quoting *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 540-41 (1995)). Thus, Plaintiffs' argument regarding the choice-of-law analysis is premature.

Plaintiffs raised choice-of-law issues are also not dispositive on whether the parties should proceed to arbitration. In *Vimar Seguros y Reaseguros, S.A.*, the Supreme Court held that "mere speculation that the foreign arbitrators might apply Japanese law," potentially resulting in lessened liability under a federal statute, is not a basis for avoiding arbitration. 515 U.S. at 541.[5]

And the Supreme Court in *Mitsubishi Motors Corporation*—the case in which the prospective waiver doctrine originated—enforced arbitration of federal antitrust claims despite the contract at issue requiring arbitration in Japan in accordance with the rules and regulations of the Japan Commercial Arbitration Association. 473 U.S. 614, 617 (1985). That contract also contained a choice-of-law clause selecting the laws of the Swiss Confederation. *Id*. at 637 n.19. Despite a prospective waiver challenge, the Supreme Court noted that any public policy concern regarding the ability to enforce federal antitrust laws in arbitration was an issue to address at the award enforcement stage*,* noting "we have no occasion to speculate on this matter at this stage in the proceedings, when Mitsubishi seeks to enforce the agreement to arbitrate, not to enforce an award." *Id*. Thus, the prospective waiver doctrine has been deemed a public policy defense to be asserted at the award stage *after arbitration*. *See also Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 373 (4th Cir. 2012).

---

[5] Similarly, in *Johnson v. Opportunity Fin., LLC*, plaintiff prematurely challenged the choice-of-law provision and the possibility that an arbitrator might enforce a choice-of-law provision that would be dispositive of a federal RICO claim did not preclude compelling arbitration. No. 3:22-cv-190, 2023 WL 2636712, at *5 (E.D. Va. Mar. 24, 2023). "[A] plaintiff's chance of success plays no role in the analysis deciding whether arbitration must be had." *Id*.

Finally, another recent decision analyzing tribal lending agreements and the prospective waiver doctrine expressly rejected the choice-of-law arguments raised by Plaintiffs here. *See Adam Wood v. W6LS, Inc., et al.*, Case No. 4:24-cv-128 in the Western District of Kentucky, ECF No. 21[6](granting motion to compel arbitration in tribal lending case and explaining "concerns that a choice-of-law clause might bar the enforcement of substantive rights should generally be dealt with at the award-enforcement stage," and whether application of a relevant tribal code would preclude state law "must be decided in the first instance by the arbitrator.").

The loan agreement in *Wood* similarly required application of "[t]ribal law and applicable federal law." *Id*. at . *Wood* argued there, just like Plaintiffs argue here, that:

> (1) the choice of law clause prospectively waives state rights, and, therefore, the delegation provision is unenforceable; (2) the inability of the arbitrator to consider state law when determining arbitrability is a[nother] separate, independent reason for rendering the delegation provision unenforceable.

*Id*. at 2 (internal quotations omitted). The Wood Court rejected each of these arguments, finding instead that "Wood's agreements allow for the application of federal law, including the FAA, at the arbitrability stage. These clauses allow him to raise choice-of-law objections with the arbitrator." *Id*. at 8. The Wood Court further explained that it "cannot predict how the application of the relevant tribal law might affect Wood's prospective-waiver argument," and "[i]f Wood ultimately believes that the arbitrator's determinations are erroneous, he may seek judicial redress" at the enforcement phase. *Id*. at 9.

---

[6] The Wood opinion is not yet available on Westlaw, but Tribal Defendants have attached the *Wood* opinion as Exhibit A for the Court's convenience. This Court can and should take judicial notice of this opinion. *See Jones v. Int'l Ass'n of Bridge Structural Ornamental & Reinforcing Iron Workers*, 864 F. Supp. 2d 760, 773 (E.D. Wis. 2012) (court may take judicial notice of another court's opinion). The *Wood* decision, dated September 30, 2025, came out two months after Tribal Defendants filed their motion to compel in this case on July 30, 2025 (Doc. 19), but is directly relevant to the issues raised in Tribal Defendants opening brief, as well as Plaintiffs' arguments in their Opposition.

Like *Wood*, Plaintiffs argue that the Loan Agreements and the Tribe's financial regulations and codes preclude enforcement of the Arbitration Provision because the regulations do not allow arbitrators to apply state law the same as courts, ergo, consumers do not have any possible avenue to effectively vindicate their rights.[7] Not only are Plaintiffs' melodramatic, unsupported statements demonstrably false, but just as the courts explained in *Vimar*, *Mitsubishi Motors Corp.*, and *Wood*, Plaintiffs' predictions about what an arbitrator may or may not do, and what law they may or may not apply, is premature, and irrelevant to the issue before the Court on delegation.

Just because Tribal Defendants may use and rely upon their sovereign immunity to defend against certain types of claims, like state law claims, such defenses do not equate to removing Plaintiffs' right to bring those claims. It's also unclear how or why an arbitrator would not be able to apply state law the same as a court and there is no evidence that the Tribe's regulations must be applied exclusively by the arbitrator. Instead, Plaintiffs can bring all types of claims in arbitration, the Tribal Defendants also have a right to defend against those claims, and it is up to the arbitrator to decide what law applies; these simple truths do not interfere with the delegation clause.

What Plaintiffs appear to be advocating for is an untenable version of the prospective waiver doctrine that does not allow any tribe to defend against any claim.[8] Notwithstanding that

---

[7] *See, e.g.*, Opposition at 14 ("an arbitrator could not apply state law in the same manner as the courts"); *id.* at 15 (the Tribe's regulations "which the arbitrator must 'exclusively apply,' prospectively waives a borrowers' rights and deprives them of any meaningful opportunity to vindicate their claims.").

[8] Plaintiffs proposed interpretation of the prospective waiver doctrine ultimately seeks the opposite of what the doctrine exists to achieve: to reconcile the FAA with other federal laws over which the FAA lacks preemptive force. A finding by this Court that certain state laws must be applied against a sovereign improperly strips the arbitrator of jurisdiction to resolve the dispute and ignores federal tribal policies and law. Importantly, states do not have authority over tribes—that authority exclusively rests with the United States Congress. *See, e.g.*, *Mestek v. LAC Courte Oreilles Cmty. Health Ctr.*, 72 F.4th 255, 258 (7th Cir. 2023). If this Court were to accept Plaintiffs' positions, Plaintiffs would effectively abrogate the Tribe's established sovereign immunity–a serious

this is not the law and Plaintiffs have no support for such a position, the defenses available to the Tribal Defendants do not change based on the forum. Said differently, Plaintiffs claims would not fair any better in this Court than in arbitration. That, and for a multitude of other reasons stated herein, renders the delegation clause in full force and effect. *See Johnson,* 2023 WL 2636712, at *5.

### 3. Plaintiffs Misconstrue Prospective Waiver and its applicability to State Law Claims, and the Loan Agreements

Notwithstanding the enforceability of the delegation clause, Plaintiffs have misrepresented the prospective waiver doctrine as a settled, indisputable legal doctrine that prevents enforceability of arbitration provisions that waive *either* federal or state law claims. *See* Opposition at 2 (arguing that "Viking River follows the reasoning that other circuit courts have adopted when addressing arbitration provisions that prospectively waive the application of state *and/or* federal substantive rights and remedies" (emphasis added)). In doing so, Plaintiffs rely on district court cases out of the Fourth Circuit with substantively different arbitration provisions, stretch *Viking River* beyond the Supreme Court's single footnote on a separate issue, and ignore more recent and persuasive authority rejecting Plaintiffs' argument that the prospective waiver doctrine applies to state law claims.

First, Plaintiffs assert that "the Court in *Viking River* explained that the Federal Arbitration Act (FAA) does not permit enforcement of arbitration provisions that prevent the application of state-law rights and remedies." Opposition at 2 (citing *Viking River Cruises*, 596 U.S. 639, 653 n. 5 (2022)). But that was not the Supreme Court's holding in *Viking River*, and importantly, *Viking*

violation of the Tribe's rights and an authority that rests solely within the United States Congress. *See Mestek.* 72 F.4th at 258 (explaining Congress's waiver of sovereignty "must fit like a glove in their unequivocality," and "[a]ny ambiguity must be interpreted in favor of [sovereign] immunity.").

*River* does not even *mention* the prospective waiver doctrine. Instead, in a single footnote, the Supreme Court characterized a party's argument that "the principle that the FAA does not mandate enforcement of provisions waiving substantive rights is limited to federal statutes" as "erroneous." *Id*. Thus, as is undisputed and irrelevant here, *Viking River* merely established that agreeing to arbitrate statutory rights, federal or state, does not nullify those rights simply because they are compelled to arbitration. *Id*. at 653 ("by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in the arbitral forum.").

Second, *no circuit-level opinion holds that the doctrine exists to preserve state substantive rights independent of preserving federal rights.* And importantly, the majority of Plaintiffs' authorities from the district court level concerned agreements in which the parties were deemed to have waived rights under *federal* law. *See, e.g.*, *Hengle*, 19 F.4th at 338 (holding that the arbitration provisions "require the arbitrator to determine whether the arbitration provision impermissibly waives <u>federal</u> substantive rights without recourse to federal substantive law" (emphasis added).[9]

This exact issue was also recently decided by the Eleventh Circuit. *See Dunn v. Glob. Tr. Mgmt.*, LLC, No. 21-10120, 2024 WL 4379966 (11th Cir. Oct. 3, 2024). In *Dunn*, the court was

---

[9] *See also Williams v. Medley Opportunity Fund II, LP*, 965 F.3d 229, 242 (3d Cir. 2020) ("the question is whether a party can bring and effectively pursue the <u>federal</u> claim" (emphasis added)); *Gibbs v. Haynes Invs., LLC,* 967 F.3d 332, 340 (4th Cir. 2020) (denying enforcement "where an arbitration agreement prevents a litigant from vindicating <u>federal</u> substantive statutory rights" (emphasis added)); *Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 675 (4th Cir. 2016) (holding that parties may waive rights and use choice-of-law clauses in arbitration agreements "[b]ut a party may not underhandedly convert a choice of law clause into a choice of no law clause—it may not flatly and categorically renounce the authority of the <u>federal</u> statutes to which it is and must remain subject" (emphasis added)); *Dillon v. BMO Harris Bank, N.A.*, 856 F.3d 330, 336 (4th Cir. 2017) ("the arbitration agreement functions as a prospective waiver of <u>federal</u> statutory rights and, therefore, is unenforceable as a matter of law" (emphasis added); *Smith v. Western Sky Fin., LLC*, 168 F. Supp. 3d 778, 784 (E.D. Pa. 2016) (describing the contract as "just the latest iteration employed by [defendants] in seeking to avoid the reach of <u>federal</u> law" (emphasis added)).

presented with almost identical questions of the enforceability of an arbitration provision that purportedly precluded state law claims and whether to delegate threshold questions of arbitrability to the arbitrator when the parties agreed to arbitrate the same. There, the Eleventh Circuit analyzed whether an arbitration provision entered into between a borrower and a tribal lender owned by the Tunica Biloxi Tribe of Louisiana "prospectively waive[d] Plaintiffs' rights under the FAA." *Id*. at *9. The Court found the issue of arbitrability should be delegated to the arbitrator, reasoning that the arbitration provision at issue incorporated, rather than precluded, the FAA. *Id*. The court also explained that application of Tribal law does not itself conflict with the FAA, and further concluded that the contractual language does not prevent plaintiffs' ability to challenge the enforceability of the arbitration agreement with the arbitrator under the FAA. *Id*. at *9.

The same outcome is true here. *Dunn*, which—like here and unlike *Hengle*[10]—included governing law provisions selecting a tribe's law and "applicable federal law." 2024 WL 4379966, at *3. The FAA is "applicable federal law" in the context of examining the enforcement of arbitration agreements. *Id*. Thus, the agreements preserved the parties' ability to assert defenses under the FAA. *Id*. at *9.

Because the Loan Agreements here specifically incorporate application of the FAA and nothing in Tribal law conflicts with the FAA, Plaintiffs are not precluded from challenging the enforceability of the arbitration agreement once the issue is delegated to the arbitrator.[11] As

---

[10] *See* Supra, n. 3.

[11] The Loan Agreement as a whole is governed by "[t]he laws of the Tribe and applicable federal law." *See* Lierz Decl. Ex. A, p. 10. For the Arbitration Provision itself, the Parties agreed to be bound by "applicable substantive law consistent with the laws of the Tribe and applicable federal law, and the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq*." *See* Lierz Decl. Ex. A, p. 17. The Arbitration Provision further clarifies that when bringing claims in arbitration, the Tribe's limited waiver of sovereign immunity applies to "all claims based upon a violation of any tribal, state, or federal constitution, statute or regulation, [and] all Tribal, federal, or state law claims based on any legal or equitable theory." Lierz Decl. Ex. A, p. 17–18.

explained in *Dunn*—consistent with *Rent-A-Center*—"[t]he relevant inquiry remains whether the delegation provisions themselves inhibit the arbitrator from considering Plaintiffs' arguments about the enforceability of their arbitration agreements under the FAA." *Id* at \*10. The delegation provisions here do not, and Plaintiffs' claims must therefore be submitted to arbitration.

Turning to the district court decisions within the Seventh Circuit, although *Harris*—which is currently on appeal to the Seventh Circuit—found a waiver of state law claims could constitute a prospective waiver, *see Harris v. FSST Mgmt. Servs., LLC*, 686 F. Supp. 3d 734, 741-42 (N.D. Ill. 2023),[12] a subsequent decision from the Southern District of Indiana disagreed and found to the contrary, *see Walton v. Uprova Credit LLC*, 722 F. Supp. 3d 824, 837 (S.D. Ind. 2024) (enforcing arbitration provision that precluded state law claims because "[t]he delegation clause at issue here repeatedly affirms the applicability of federal law and therefore contains no waiver of federal rights. By that measure, the delegation clause is enforceable.").

The loan agreement in *Walton* was similarly "governed by and enforced in accordance with the laws of the Tribe and applicable U.S. federal law," but did not expressly allow a consumer to bring state law claims in arbitration. *Id*. at 829. Even under more restrictive circumstances, *Walton*

---

[12] In *Harris*, the court did address whether a loan agreement waiving state law (as opposed to federal law) claims would also constitute an impermissible waiver. But importantly, the court did not address–and defendant did not argue–that no waiver of state law existed in the first place. *Id*. at \*9. The court noted this deficiency, explaining defendant failed to argue that the specific loan agreement was enforceable even if a waiver of state law generally constituted an impermissible waiver under Supreme Court precedent. *Id*. The same flaw does not exist here: Tribal Defendants have detailed extensively how and why their Loan Agreements do not waive state law rights, and for that reason, the decision in *Harris* is not instructive. Further calling into question the soundness of the *Harris* decision, the loan agreement at issue *Harris* was the same form loan agreement at issue in *Wood v. W6LS, Inc et al*, Case No. 4:24-cv-128-DJH (W.D. Ky. Sept. 30, 2025) (both Harris and Wood involving tribal lending companies owned by the Otoe-Missouria Tribe). As discussed above, in *Wood*, the court categorically rejected the same arguments raised in *Harris* and compelled the case to arbitration.

considered the same argument raised by Plaintiffs here—that waiver of state law claims could constitute a prospective waiver—and explicitly rejected it. Specifically, the Court explained that it was "unpersuaded that the prospective waiver doctrine was intended to preserve state statutory rights," rejecting plaintiff's argument that a "wholesale disclaimer of state law, in and of itself, renders the delegation clause unenforceable under the prospective waiver rule." *Id*. at 836.

As for *Fahy*, although that loan agreement was similarly governed by "the laws of the Tribe and applicable federal law," the Court did not address whether a loan agreement expressly allowing plaintiffs to bring state law claims in arbitration would constitute a prospective waiver, like the Loan Agreements here. *See Fahy v. Minto Dev. Corp*., 722 F. Supp. 3d 784, 790 (N.D. Ill. 2024). Because *Fahy* did not address whether an agreement containing such a provision would constitute a waiver, the court's decision is inapplicable.

*Walton*, over *Fahy*, *Harris*, and the various other 4th Circuit cases cited by Plaintiffs, is *actually* similar to the Loan Agreements here. Accordingly, it is dispositive: no prospective waiver exists where federal substantive rights are expressly preserved.

Even if this Court considers state substantive rights in the context of prospective waiver, (which is not the law), Plaintiffs' arguments still fail as the Arbitration Provision allows Plaintiffs to bring any and all claims in arbitration, including "all Tribal, federal, or state law claims based on any legal theory." Lierz Decl. Ex. A, p. 17–18. Instead of acknowledging the express language, Plaintiffs' response misconstrues the Loan Agreements' provisions by cherry picking certain provisions and ignoring others in reaching their supposed conclusion on prospective waiver. Though when read in its entirety, giving effect to each provision, as one must do, there is no waiver, prospective or otherwise of Plaintiffs' federal or state substantive rights.

For certain, these provisions do not exist to somehow obfuscate any liability regarding the

Loan Agreement, as Plaintiffs contend. *See* Opposition at 4 (arguing "the loan agreements further attempt to…avoid state usury protections"). To the contrary, the Tribe provides an express, limited waiver of its sovereignty for those claims, implicitly recognizing the importance of a plaintiff's ability to bring all claims–state, federal, or otherwise–in the chosen forum. This is not a game: the Arbitration Provision explicitly states, and Tribal Defendants do not dispute, that Plaintiffs can bring all state, federal, or tribal claims regarding the Loan Agreement *in arbitration*. The Loan Agreements are therefore neither contradictory, manipulative, nor unenforceable.

Plaintiffs repeatedly argue that courts have found "almost identical" provisions as waiving state law rights, but those provisions differ in material respects. For example, Plaintiffs argue that "the Governing Law provision in [the Loan Agreements] is almost identical to a provision held invalid by the Fourth Circuit in *Dillon*." Opposition at 11 (citing *Dillon v. BMO Harris Bank*, 856 F.3d 330 (4th Cir. 2017)). Not so: the agreement in *Dillon* provided that "[t]his Agreement and the Agreement to Arbitrate are governed by [tribal law]" and "[n]either this Agreement nor the Lender is subject to the laws of any state of the United States." *Dillon*, 856 F.3d at 335. Unlike here, the agreement in *Dillon* did not allow application of "applicable federal law," did not expressly preserve FAA rights, and did not expressly allow consumers to bring all claims, including state law claims, in arbitration. Rather, it required **exclusive** application of Tribal Law. To characterize the agreement in *Dillon* as "almost identical" to the Loan Agreements here is extremely misleading, and in fact underscores Plaintiffs' inability to locate a single case finding the *actual* provisions at issue here as constituting waiver of state law rights.

Accordingly, the prospective waiver doctrine does not invalidate Plaintiffs' Loan Agreements because those agreements expressly preserve federal substantive rights, and further

allow Plaintiffs to bring all claims, including Tribal, federal, and state law claims, in arbitration.[13]

## B.     THE COURT LACKS SUBJECT MATTER JURISDICTION

Plaintiffs agree that Tribe, Tribal Entities, and Tribal Defendants are entitled to tribal sovereign immunity. *See* Opposition at 20 (failing to contest the issue); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (holding that "[f]ailure to respond to an argument . . . results in waiver"). Despite this concession, Plaintiffs maintain that their claims do not implicate tribal sovereign immunity because: (1) prospective relief is permissible against the Tribal Defendants in their official capacities; and (2) any monetary relief does not implicate the Tribe's sovereignty as it is against the Tribal Defendants in their individual capacities. *See id.* at 20–24. Both Plaintiffs stated exceptions to sovereignty are unpersuasive and fail as a matter of law.

### 1.     Sovereign Immunity Bars Prospective Relief

*First*, while Plaintiffs argue that they can seek prospective relief without implicating the Tribal Defendants' sovereign immunity, this is not actuality. Plaintiffs' complaint only seeks injunctive and declaratory relief against the Tribal Defendants in their official capacities. Compl. (Dkt. 1) ¶¶ 32–41. Thus, the relief sought by Plaintiffs is against the Tribe for which they have conceded has sovereign immunity. *See Lewis v. Clarke*, 581 U.S. 155, 162 (2017) (in official capacity suits, "[t]he real party in interest is the government entity, not the named official."). This fact alone belies Plaintiffs' argument.

Further, Plaintiffs primarily rely on *Hengle*, asserting that sovereign immunity does not bar prospective relief against tribal officials sued in their official capacities. Opposition at 20–21. Not only is *Hengle* not binding, it is distinguishable and provides a cautionary tale of when reasoning

---

[13] And, if any doubt remains regarding the scope of the delegation clause, the FAA requires any doubts of arbitrability in favor of arbitration. *Mitsubishi Motors Corp.* 473 U.S. at 626. *Mitsubishi* should be enforced here and this matter should proceed in arbitration.

sweeps too broadly. Specifically, *Hengle* relies on the Supreme Court's decision in *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782 (2014), which held that the Indian Gaming Regulatory Act did not waive tribal sovereign immunity for suits challenging off-reservation gaming. *Id.* at 785. In dicta, the Supreme Court suggested alternative recourse states could seek, including suits for prospective relief not against "the Tribe itself," but against "*individuals*." *Id.* at 795–96. In other words, prospective relief against tribal officials is only permissible when individual, personal conduct is at issue. *See Puyallup Tribe, Inc. v. Dep't of Game of State of Wash.*, 433 U.S. 165, 171–72 (1977) (permitting "suit to enjoin violations of state law by individual tribal members fishing off the reservation" because it "is analogous to prosecution of individual Indians for crimes committed off reservation lands"); *Lewis*, 581 U.S. at 163 (permitting negligence suit against tribal employee based on the employees "personal actions").

Despite citing *Bay Mills*, *Puyallup*, and *Lewis*, the *Hengle* court overlooked the fundamental distinction between the relief sought and the nature of the conduct involved. *See* 19 F.4th at 345. *Hengle* presumed, without explaining why, that official capacity suits can be maintained to enjoin official tribal action. *See id.* But this is directly contrary to tribal sovereign immunity, and the Court should not follow *Hengle*'s lead.

Nevertheless, that is the very path Plaintiffs invite to Court to walk down. They argue *Hengle* permits prospective relief against tribal officials sued in their official capacities for official conduct, but this is an incorrect application of *Bay Mills*.[14] To the extent *Bay Mills* applies, it only does so with respect to individual capacity suits for personal conduct—that is, relief aimed not at "the Tribe itself," but rather against "*individuals*." *See Bay Mills*, 572 U.S. at 796. Yet by their

---

[14] Plaintiffs' citation to *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140 (10th Cir. 2011), does not alter the analysis. *Crowe* was decided before *Bay Mills* and involved the unlawful exercise of tribal court jurisdiction, neither of which provides guidance on *Bay Mills*'s application here.

own admission, this is not the relief Plaintiffs seek. *See* Opposition at 20 ("As explicitly stated in the Complaint, Plaintiffs seek . . . injunctive and declaratory relief against [Tribal Defendants] in their official capacities."). Instead, Plaintiffs seek prospective relief against the Tribe for official tribal action. This is precisely the type of claim to which sovereign immunity applies, and Plaintiffs agree that Tribe, Tribal Entities, and Tribal Defendants are entitled to such immunity.

### 2. Sovereign Immunity Bars Individual Capacity Claims Seeking Monetary Relief

*Second*, Plaintiffs argue that their individual capacity claims seeking monetary relief against the Tribal Defendants are permissible because "they do not implicate the sovereignty of the tribe" and only "seek the Tribal Defendants personal assets." Opposition at 21, 23. This argument flies in the face of Plaintiffs' requested relief. "Courts may not simply rely on the characterization of the parties in the complaint, but rather must determine . . . whether the relief sought is only nominally against the official and in fact is against the official's office." *Mestek*, 72 F.4th at 261 (internal quotations and citations omitted). It is clear that Plaintiffs are after the coffers of the Tribe, not the checking and savings accounts of ten Tribal Defendants.

A review of the complaint demonstrates that the alleged conduct arises entirely out of the Tribal Defendants' official acts, and therefore the relief sought is against the Tribe. *See Lewis*, 581 U.S. at162. In other words, the individual actions of the Tribal Defendants have no independent legal effect; rather, it is the Tribal Defendants' *official* acts, authorized by the tribal office they hold, that caused Plaintiffs' alleged injuries. *See Miller v. Coyhis*, 877 F. Supp. 1262, 1266 (E.D. Wis. 1995) (finding suit based on tribal officials' official acts was a suit against the tribe). This distinction is fundamental, because imposing individual damages against tribal officials for official acts directly implicates the sovereignty of the Tribe. *See id.* That is, monetary damages—even from personal assets—chills legitimate and authorized tribal action, which in turn interferes with

16

tribal governance and sovereignty. *See id.* Plaintiffs' citations to out-of-circuit authorities such as *Fitzgerald*[15] do not change this conclusion. *See* Opposition at 22–23.

Similarly, Plaintiffs' reliance on *Lewis v. Clarke*, 581 U.S. 155, 163 (2017), does not change this analysis. In *Lewis*, the Supreme Court declined to extend tribal sovereign immunity to a tribal employee in a state negligence action even though the employee was "operating a vehicle within the scope of his employment." *Id.* But there, the negligence suit sought "to recover for [the employees] personal actions" and the "judgment [would] not operate against the Tribe." *Id.*

Not so here. The allegations against the Tribal Defendants relate to official tribal acts, performed by tribal officers, pursuant to tribal authority. In other words, there is no personal action, and any judgment would necessarily run against the Tribe. *See Mestek*, 72 F.4th at 262 ("Because Mestek has, in effect, sued the five employees in their official capacities, tribal sovereign immunity bars her claims against them."); *Miller*, 877 F. Supp. at 1266.

Lastly, Plaintiffs attempt to place Tribal Defendants' conduct outside the sphere of official tribal acts. Specifically, they attempt to limit the universe of "official legislative functions" to "voting to pass legislation." *See* Opposition at 24. But Plaintiffs cannot plead around sovereign immunity by merely alleging the Tribal Defendants' oversight and management responsibilities somehow fall outside their official functions. On the contrary, the record is clear that this conduct falls within their official functions, or, at the very least, is incidental to them. *See* Dkt. No. 19 at 24, 27 (discussing these legislative functions); *cf. Morrison v. Olson*, 487 U.S. 654, 694, (1988)

---

[15] In *Fitzgerald*, the court recognized that individual capacity claims trigger tribal sovereign immunity when they "interfere[] with tribal self-government or undermine[] the tribal forum's authority." 687 F. Supp. 3d at 779. But *Fitzgerald* and Plaintiffs' contention that "off-reservation lending activity" does not "directly" interfere with tribal self-governance is shortsighted. *See id.*; Opposition at 23. But as stated above, monetary damages threaten to chill legitimate and authorized tribal action and self-governance.

(recognizing oversight as "incidental to the legislative function"); *Metzenbaum v. Brown*, 448 F. Supp. 538, 542 (D.D.C. 1978) (noting the "power of Congress is exercised by making laws and by legislative oversight of the administration of those laws"). Accordingly, tribal sovereign immunity divest the Court of subject matter jurisdiction.

### 3. Plaintiffs' Claims are Barred by Legislative Immunity

Plaintiffs incorrectly argue that legislative immunity is unavailable because the Tribal Legislative Defendants engaged in "management and oversight of the economic affairs of the tribe," which is "inherently executive in nature." Opposition at 25. In doing so, Plaintiffs again attempt to limit the universe of "official legislative functions" to merely "votes on specific legislation." *See id.* This argument fails for the reasons discussed above. The record clearly establishes that the actions at issue fall squarely within the scope of the Tribal Legislative Defendants' legislative functions or are incidental to them. *See supra* at 18-19. Plaintiffs similarly cannot plead around this conclusion. Accordingly, legislative immunity bars Plaintiffs' claims against the Tribal Legislative Defendants.

In sum, as an arm of the Tribe, Tribal Defendants have clearly established their entitlement to tribal sovereign immunity—or, at a minimum, legislative immunity—against all claims asserted. Because Plaintiffs have failed to raise any colorable argument to the contrary, dismissal under Rule 12(b)(1) is not only appropriate, but compelled.

### C. PLAINTIFFS' COMPLAINT FAILS TO STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED[16]

#### 1. Plaintiffs' RICO claims Must be Dismissed

---

[16] Plaintiffs request leave to amend their RICO and unjust enrichment claims should the Court find them deficient. *See* Opposition at 29 n.7, 30. These requests should be denied because they do not comply with the Court's Local Rules. *See* Civil L.R. 15(b) (stating that requests to amend pleadings must be made by separate motion with the proposed pleading attached).

18

Plaintiffs contend that their RICO claims adequately place Tribal Defendants on notice of the claims against them. In support of this, Plaintiffs largely repeat the allegations set forth in their complaint. *See* Doc. 24 at 27–28. However, simply reiterating shotgun allegations does not cure their insufficiency. Similarly, Plaintiffs' reliance on out-of-circuit authority such as *Dixon* and *Fitzgerald* is misplaced because a close review of their complaint demonstrates how the allegations provide insufficient notice. For example, most of the factual allegations relate to various state usury laws, *see* Compl. ¶¶ 43–95, and a generalized overview of the alleged tribal lending scheme, *see id.* ¶¶ 96–116. The case-specific allegations, however, merely incorporate those allegations by reference and assert, in conclusory and generalized terms, that the same scheme has been replicated here. *See, e.g.*, *id.* ¶¶ 117–19. To analogize, Plaintiffs recite the elements of the alleged tribal lending scheme without pleading plausible, individualized allegations as to each Tribal Defendant. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (citation omitted)). This is insufficient to place the Tribal Defendants on notice of the claims against them. Accordingly, Plaintiffs' RICO claims should be dismissed.

### 2. No Benefit Conferred to Support Unjust Enrichment Claim

Plaintiffs also argue the complaint sufficiently "alleges that the Tribal Defendants received at least some of the profits from the overarching usurious scheme, and that they knew they were receiving this benefit." Opposition at 29 (citing only paragraphs 120 and 126 of the complaint). The Court should reject this argument. Neither paragraph 120 nor 126 alleges that any particular Tribal Defendant received any benefit. *See Admiral Ins. Co. v. Paper Converting Mach. Co.*, 811 N.W.2d 351, 360 n.16 (Wisc. 2012) (identifying elements of unjust enrichment claim). Instead, Plaintiffs asks the Court to infer that because the Tribe allegedly received "only a small portion of the profits from the lending business," then each Tribal Defendant personally must have received

19

some share of the remaining profits. But this is pure speculation. It invites the Court to assume facts that have not been pleaded, and to which the Tribal Defendants have had no opportunity to respond. This is improper. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level"). Plaintiffs implicitly acknowledge so by (improperly) seeking leave to amend. *See* Opposition at 30. The claim should be dismissed.

### 3. Plaintiffs' Declaratory Judgment Claim Fails as a Matter of Law

Finally, it is well established that a declaratory judgment is a form of relief, not an independent cause of action. *See Sieving v. Cont'l Cas. Co.*, 535 F. Supp. 3d 762, 774 (N.D. Ill. 2021). Nonetheless, Plaintiffs argue they have sufficiently pleaded a declaratory judgment claim because they cite 28 U.S.C. § 2201 and various state laws. *See* Opposition at 30. This argument is misplaced. Plaintiffs fundamentally misunderstand the nature of Tribal Defendants' motion with respect to Count Four. Because Plaintiffs' standalone claims fail under Rules 12(b)(1) and/or 12(b)(6), they cannot pursue declaratory relief in isolation. This is common sense: relief must be tied to a viable underlying claim. With no viable underlying claim, the Court must dismiss Plaintiffs' declaratory judgment claim.

## II. CONCLUSION

In view of the foregoing argument and authority, the Tribal Defendants request that the Court grant their motion and compel Plaintiffs to arbitrate their claims individually, and stay this matter accordingly. Alternatively, the Court should dismiss Plaintiffs' claims against the individual Tribal Defendants for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted.

20

Dated: October 17, 2025
 
*s/ Patrick J. McAndrews*

Patrick J. McAndrews, WIED #62623
*Attorneys for Defendants Spencer Gautheir, Rebecca Brunette, Joan Delabreau, Randy Chevalier, Crystal Chapman-Chevalier, Dana Waubanascum, Daynell Grignon, Gena Kakkak, Joey Awonohopay and Michael Fish, Jr.*

**Spencer Fane LLP**
1000 Walnut
Kansas City, Missouri 64111
(816) 474-8100
(816) 474-3216 (facsimile)
pmcandrews@spencerfane.com

and

Ariel K. Lierz, WI Bar # 1123908
**Spencer Fane, LLP**
100 South Fifth Street, Suite 2500
Minneapolis, Minnesota 55402
(612) 268-7000
(612) 268-7001 (facsimile)
alierz@spencerfane.com

21

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 17, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of the electronic filing to all CM/ECF participants.

<div style="margin-left:45%">

*s/ Patrick J. McAndrews*
Patrick J. McAndrews, WIED #62623
*Attorneys for Defendants Spencer Gautheir, Rebecca Brunette, Joan Delabreau, Randy Chevalier, Crystal Chapman-Chevalier, Dana Waubanascum, Daynell Grignon, Gena Kakkak, Joey Awonohopay and Michael Fish, Jr.*

**Spencer Fane, LLP**
1000 Walnut
Kansas City, Missouri 64111
(816) 474-8100
(816) 474-3216 (facsimile)
pmcandrews@spencerfane.com

</div>

22