**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**
**Green Bay Division**

| | |
|---|---|
| ALICE GILL, *et al.*, *on behalf of themselves and all individuals similarly situated,* | : <br> : <br> : |
| Plaintiffs, | : <br> : |
| v. | :    Civil Action No. 1:25-cv-00489-BBC <br> : |
| SOAREN MANAGEMENT, LLC, *et al.*, | : <br> : |
| Defendants. | : <br> : |

**PLAINTIFFS' OPPOSITION TO DEFENDANT SOAREN MANAGEMENT, LLC'S**
**MOTION TO DISMISS PURSUANT TO FRCP 12(b)(1), 12(b)(6), 12(b)(4) and 12(b)(1)**

Plaintiffs, by counsel, respectfully submit this Opposition to the Motion to Dismiss (ECF No. 30) filed by Defendant Soaren Management, LLC.

## INTRODUCTION

This case concerns online loans made to borrowers throughout the United States in the name of a company called Eagle Lending, LLC d/b/a Fineday Funds. These loans imposed triple-digit interest rates—exponentially higher than the interest rate caps mandated by state laws. By way of example, Ms. Gill's loan charged an interest rate of 351%, requiring her to pay more than $6,100 in finance charges over a period of five months. By way of another example, Ms. Butler's loan charged an interest rate of 795%. The making and collection of such loans violated federal law, as well as the usury laws of almost every state, which "[f]rom times immemorial," have sought to "protect desperately poor people from the consequences of their own desperation." *Otoe-Missouria Tribe of Indians v. N.Y. State Dep't of Fin. Servs.*, 974 F. Supp. 2d 353, 356 (S.D.N.Y. 2013) (citation omitted).

Although the loan contracts and the company's website both claim that the company is owned and operated by the Menominee Indian Tribe of Wisconsin, it is alleged that another company, Defendant Soaren Management, LLC, uses the tribe as a conduit for the illegal loans and actually originates, funds, underwrites, collects, and receives the majority of the profits from these illegal loans. These critical facts "and the tribe-payday lending partnership" surrounding them, are "not unique." *Gingras v. Think Fin., Inc.*, 922 F.3d 112, 126 (2d Cir. 2019). Over the last decade, "[c]ourts across the country have confronted" these "transparent attempts to deploy tribal sovereign immunity to skirt state and federal consumer protection laws." *Id*. The purpose of these schemes is to allow payday lenders to use "Native American tribal entities" as "the nominal lender to cloak the payday lenders in the sovereign immunity . . . and, in doing so, to preclude enforcement of the interest rate caps in state usury laws." *Williams v. Big Picture Loans, LLC*, 2020 WL 6784352, at *2 (E.D. Va. 2020) (citation omitted).

In its motion, Soaren Management offers a puzzling argument as to why it should be allowed to escape liability for its illegal lending activities. Rather than contesting its central role or the legality of the loans, Soaren Management argues that the case should be dismissed because the Complaint contains an incorrect description of the jurisdiction where Soaren Management is organized. Because Soaren Management is not a Delaware limited liability company as alleged in the Complaint, but rather a limited liability company formed under the laws of a different tribe, the Big Valley Rancheria, it contends that Plaintiffs failed to state a claim upon which relief could be granted, that process was insufficient, and that personal jurisdiction is lacking. (*See* ECF No. 31-1 at 10–15.)

Soaren Management's "gotcha" argument should be rejected. As this Court explained in an analogous circumstance in a different case, "an incorrect description" of a defendant's place of

business "is merely surplusage" when jurisdiction exists by virtue of a federal statute. *Bowles v. Underwood Corp.*, 5 F.R.D. 25, 26 (E.D. Wis. 1945). It is surplusage because the plain text of Rule 8 only requires the Complaint to allege "a short and plain statement of the grounds for the court's jurisdiction," a "short and plain statement of the claim showing that the pleader is entitled to relief," and "a demand for the relief sought." Fed. R. Civ. P. 8(a). Put differently, when "jurisdiction is based on upon a right to bring an action in federal court granted under the United States Code," such as the Racketeer Influenced and Corrupt Organizations Act, an allegation regarding where a company was formed "is not required." *Markham v. Computone, Inc.*, 1992 WL 59154, at *2 (E.D. Pa. Mar. 19, 1992) (citing *Bowles*, 5 F.R.D. at 25).

And while Plaintiffs' counsel apologizes for the incorrect description, it is important to explain how it happened, especially considering the unfounded accusations of bad faith lodged against Plaintiffs' counsel. According to Soaren Management's website, it has two locations, including: 7020 E. Acoma Drive, Scottsdale, Arizona, 85254 and 8235 S. Eastern Ave., Las Vegas, Nevada 89123.[1] Given the location of its operations, Plaintiffs' counsel searched the records of the Arizona Corporation Commission, *i.e.*, the state agency in Arizona where a business must register to transact business in Arizona. As of the date of the filing of the Complaint and still today, the Arizona Corporation Commission's records show that Soaren Management, LLC is registered as a foreign limited liability company with a "Domicile State" of "Delaware." **Exhibit 1**. The records further identify Soaren Management's "principal office address" as "Attn Capitol Services, Inc., 1675 S State St Ste B, Dover, DE, 19901." *Id*.

Relying on the *current* records of Arizona Corporation Commission—which were consistent with other publicly available information as detailed below—the Complaint alleged that

---

[1] https://soaren.io/ (last visited on October 17, 2025).

Soaren Management "is a limited liability company incorporated in Delaware with offices in Las Vegas, Nevada, and Scottsdale, Arizona." Compl. ¶ 30. And if Plaintiffs' counsel had been contacted prior to Soaren Management's filing of this motion, they would have voluntarily agreed to either: (1) withdraw the allegation that Soaren Management is a Delaware limited liability company; or (2) amend the complaint to include a correct description regarding Soaren Management's jurisdiction of incorporation. Plaintiffs also would have explained that they identified Soaren Management as a Delaware limited liability company based on the *current* records from the Arizona Corporation Commission—rather than relying on incomplete information from a case filed and settled more than four years ago.

In short, the bid for dismissal here fails because Plaintiffs correctly identified the proper entity, Soaren Management, LLC. A correct description of where it is registered is irrelevant to the Court's jurisdiction, as well as the sufficiency of the process and the substantive allegations (which state a claim). And to the extent the Court holds otherwise, Plaintiffs request leave to amend their complaint because amendments referring "only to the description or identity of the defendant" and "not a part of the defendant's corporate name, such as words referring to the state of incorporation of the defendant," "are freely amendable." *County Threatre Co. v. Paramount Film Distributing Corp.*, 166 F. Supp. 221 (E.D. Pa. 1958). This principle is especially true where, as here, Soaren Management failed to properly update its corporate information—as required by Arizona law—in the very state where it is headquartered.

## <u>ARGUMENT</u>

### I.      **Soaren Management's request to dismiss pursuant to Rule 12(b)(1) should be denied.**

Soaren Management's first argument contends that "Plaintiffs—all nonresidents of Wisconsin—have asserted diversity jurisdiction under 28 U.S.C. § 1332(d)(2) as the basis for this Court's subject matter jurisdiction." (ECF No. 31-1 at 11.) Against this backdrop, Soaren

4

Management argues that "[b]ecause Plaintiffs have not met their burden of demonstrating diversity, this Court cannot exercise subject matter jurisdiction and dismissal is both necessary and appropriate." (*Id*. at 12.) As explained below, this argument cannot sustain the motion to dismiss because the Complaint alleges a civil action under a federal statute, 18 U.S.C. 1961, *et seq*., thereby establishing federal-question jurisdiction. In addition to federal-question jurisdiction, this Court also has jurisdiction under the Class Action Fairness Act.

### A. Soaren Management ignores Plaintiff's full statement of the Court's subject matter jurisdiction.

Paragraph 10 of the Complaint alleges that the Court "has subject matter jurisdiction pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1332(d)." (Compl. ¶ 10.) In addition to this jurisdictional statement, the Complaint makes it abundantly clear that Plaintiffs have asserted a civil cause of action arising under federal law against Soaren Management. (*Id*. ¶ 9 ("Plaintiff seeks relief under the Racketeer Influenced and Corrupt Organizations Act ("RICO"); and various state usury and lending statutes."); *see also id*. ¶ 11 ("This Court has personal jurisdiction over Defendants because RICO authorizes nationwide service of process."); *id*. ¶¶ 177–97 (first count of the complaint alleging a "RICO Damages Class" for violations of 18 U.S.C. § 1962(c)); *Id*. ¶¶ 198–208 (first count of the complaint alleging a "RICO Damages Class" for violations of 18 U.S.C. § 1962(d)).)

"Ordinarily a court determines whether there is federal question jurisdiction by examining the plaintiff's well-pleaded complaint, for '[i]t is long-settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law.'" *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1486 (7th Cir. 1996) (quoting *Rice v. Panchal*, 65 F.3d 637, 639 (7th Cir.1995) (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63

5

(1987)); *see also Speciale v. Seybold*, 147 F.3d 612, 614 (7th Cir. 1998) ("In determining federal jurisdiction, the court generally first reviews the plaintiff's complaint.").

Here, subject matter jurisdiction clearly exists because the Complaint includes civil claims arising under a federal statute, RICO, which provides for "a private right of action for treble damages to any person injured in his business or property by reason of the conduct of a qualifying enterprise's" violation of the statute, such as the collection of an unlawful debt. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008). As one court has explained when denying a motion to dismiss pursuant to Rule 12(b)(1):

> RICO also provides a civil cause of action for persons injured in their business or property by persons who violated the criminal provision. 18 U.S.C. § 1964(c). The action may be brought "in any appropriate United States district court." 18 U.S.C. § 1964(c). The Court thus has subject matter jurisdiction over claims brought under RICO.

*Wilhite v. Awe Kualawaache Care Ctr.*, 2018 WL 3586539, at *1 (D. Mont. July 26, 2018). For the same reasons, Soaren Management's motion should be denied.

**B.      The Court also has subject matter jurisdiction under 28 U.S.C. § 1332(d) because Plaintiffs can easily establish that "any" member of the class is a citizen of a different state from "any" defendant.**

In addition to federal question jurisdiction, this Court has jurisdiction pursuant to the Class Action Fairness Act ("CAFA") as incorporated in 28 U.S.C. § 1332(d). "CAFA gives the district courts original jurisdiction over civil class action lawsuits if 'the general requirements for CAFA jurisdiction are met: minimal diversity exists between the parties, the class exceeds 100 members, and . . . the amount in controversy exceeds $5 million . . . ." *IUE-CWA, Loc. 901 v. Spark Energy, LLC*, 2019 WL 5206067, at *2 (N.D. Ind. Oct. 16, 2019) (quoting *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 617 (7th Cir. 2012)).

In support of its request for dismissal, Soaren Management argues that the Complaint fails to comply with Local Rule 8, which requires a pleading asserting jurisdiction based on diversity

of citizenship to identify "the citizenship of each party to the litigation . . . . If any party is an unincorporated association, limited liability company, or partnership, the pleading or notice must identify the citizenship of all members." L.R. 8. Because the Complaint failed to identify the citizenship of Soaren Management's members, it contends that the complaint should be dismissed and that amendment would be futile. This second "gotcha" argument should be rejected for two reasons.

*First*, pursuant to 28 U.S.C. § 1653, "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." 28 U.S.C. § 1653. Pursuant to this statute, the Seventh Circuit has concluded that a "district court had jurisdiction" where a "defendant supplemented the record under 28 U.S.C. § 1653 with affidavits demonstrating that minimal diversity existed" under CAFA. *Dancel v. Groupon, Inc.*, 940 F.3d 381, 385 (7th Cir. 2019) (citing *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 733 (7th Cir. 2017) (granting motion for leave to supplement the record "[w]ith the affidavits submitted, we find there is minimal diversity, and the district court properly asserted jurisdiction under CAFA")).

*Second*, CAFA's citizenship requirement only requires that "*any* member of a class of plaintiffs is a citizen of a State different from *any* defendant." 28 U.S.C. § 1332(d)(2)(A) (emphasis added). This requirement is known as "minimal diversity" because "[i]n contrast to the complete diversity requirement of § 1332(a), § 1332(d)(2) requires 'only one member of the plaintiff class— named or unnamed—[to] be diverse from any one defendant' for diversity to be satisfied." *Gallagher v. Johnson & Johnson Consumer Companies, Inc.*, 169 F. Supp. 3d 598, 602 (D.N.J. 2016) (quoting *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1193 n. 24 (11th Cir. 2007)); *see also Stell v. Gibco Motor Express, LLC*, 2016 WL 2620178, at *2 (S.D. Ill. May 9, 2016) ("CAFA

jurisdiction requires only minimal diversity while traditional diversity jurisdiction requires complete diversity.").[2]

Here, CAFA's minimal diversity requirement is easily satisfied as the Complaint alleges the residence of each of the Plaintiffs, who are residents of the following states: California, Colorado, Indiana, Minnesota, Florida, Georgia, Oregon, New Jersey, Arizona, and Nebraska. (*See* Compl. ¶¶ 13–29.)[3] And to the extent this allegation is not sufficient, attached hereto is a declaration from Plaintiff Morgan Rice confirming that Indiana is her domicile. Exhibit 2.

Plaintiffs also allege that certain defendants—Defendants Gena Kakkak, Joey Awonohopay, Spencer Gauthier, Michael Fish Jr., Dana Waubanascum, Joan Delabreau, Rebecca Brunette, Daynell Grignon, and Randy Chevalier—are residents of Wisconsin. (*See id.* ¶¶ 32–41.) Plaintiffs not only allege that these defendants are residents of Wisconsin, but one of them, Gena Kakkak, submitted a declaration in support of the Tribal Officials' Motion to Compel Arbitration, or in the Alternative, Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (*See* ECF No. 21.) In her declaration, she stated as follows:

> I reside on the Menominee Indian Reservation which is located within the exterior boundaries of the State of Wisconsin.

(*Id.* ¶ 2.). "The law is clear that, for diversity purposes, Native Americans residing on reservations are citizens of the state where the reservation is located." *Ward v. Mortimer*, 2010 WL 3761906, at *1 (E.D.N.Y. Sept. 16, 2010) (compiling cases). And if any more were needed, further information provided in her declaration confirms that this is her domicile, including that she is currently serving

---

[2] The statute further defines the term "class" as "all of the class members in a class action," and "class members" as the "persons (named or unnamed) who fall within the class definition of the proposed or certified class in a class action." 28 U.S.C. §§ 1332(d)(1)(A), 1332(d)(1)(D).

[3] The Tribal Defendants have also filed copies of each of the Plaintiffs' loan agreements in support of their request to compel arbitration. (*See* ECF Nos. 20-1 through 20-17.) These agreements show each of Plaintiffs' addresses and confirm that they reside in various states across the country.

a term as Secretary of the tribe and on the tribal legislature, working out of an office on the reservation. (ECF No. 21 ¶¶ 1, 3, 6–7).

Beyond this, Soaren Management's brief concedes that "[n]o named Plaintiff resides in Wisconsin." (ECF No. 31-1.) Thus, there is no genuine dispute that there is minimal diversity between "any member of the plaintiffs" and "any defendant," even though Plaintiffs inadvertently failed to identify the citizenship of each of Soaren Management's members as required by Local Rule 8. That failure, however, is not fatal because the record has been supplemented and shows that there is minimal diversity.

## II.     Soaren Management's request to dismiss pursuant to Rule 12(b)(6) should be denied.

The central allegation in this case is that Soaren Management and its employees "are the true operators of the Fineday usurious lending scheme and provide the day-to-day management, operation, investment and customer service functions of the enterprise from their headquarters in Arizona." (Compl. ¶ 7; *see also id*. ¶ 24 ("These nontribal coconspirators include Defendants Soaren Management and Kraken Holdings, as well as their yet-to-identified owners, officers, and investors, who are the true drivers of Fineday's lending operations."); *id*. ¶ 126 ("For example, Soaren Management is the operator of Fineday's website, which is the sole avenue through which Fineday accepts applications for, issues, and services its usurious loans.") *id*. ¶ 127 ("Upon information and belief, Soaren Management . . . as well as their nontribal owners, managers, and investors, are also the primary—if not sole—source of funds for Fineday's operations, and they produce all of the leads for Fineday; manage the technology and call centers that issue and service Fineday's loans; collect payments on the loans; and sell off nonperforming debts.").)

Soaren Management did not challenge the sufficiency of the allegations because courts across the country have denied motions to dismiss based on similar allegations. *See, e.g., Dixon v. Gatzke*, 2025 WL 1826106, at *13 (N.D. Ill. July 2, 2025) (denying motion to dismiss because the

plaintiff plausibly alleged that the defendants were "the actual ringleaders of the lending scheme and 'play a hands-on role in the day-to-day execution of the'" of the tribal lending operation) (citation omitted); *Fitzgerald v. Wildcat*, 687 F. Supp. 3d 756, 789 (W.D. Va. 2023) (finding that allegations, including that the defendants had "the right to market, originate, renew, service, and collect loans made in the name of [a tribal entity]," were sufficient to state a claim against a company and its owner); *Gibbs v. Stinson*, 421 F. Supp. 3d 267, 312 (E.D. Va. 2019) (finding allegations, including that "Defendants helped design and implement the Tribal lending business through their ownership and control of Think Finance, which developed the Tribal lending business model at the heart of this allegedly unlawful RICO enterprise" were sufficient); *Brice v. Plain Green, LLC*, 372 F. Supp. 3d 955, 985 (N.D. Cal. 2019) (finding that, in a civil-RICO case, defendants who "were instrumental in setting up, and knowingly set up, an enterprise whose sole purpose was to collect illegal debts" could be found liable); *Smith v. Martorello*, 2021 WL 981491, at *4 (D. Or. Mar. 16, 2021) (denying a motion to dismiss where it was alleged that the individual controlled the tribal lending operations).

Rather than challenging the sufficiency of the allegations against it, Soaren Management renews its "gotcha" argument, asserting that the Complaint must be dismissed because the allegations "relate to a nonexistent LLC." (ECF No. 31-1.) It is no surprise, however, that Soaren Management offers no legal authority to support its position except a case that confirms that "[i]n Wisconsin," the "'general rule is that if the misnomer or misdescription does not leave in doubt the identity of the party intended to be sued, or, even where there is room for doubt as to identity, if service of process is made on the party intended to be sued, the misnomer or misdescription may be corrected by amendment at any stage of the suit, or even after judgment, and a judgment taken by default is enforceable.'" *Lewis v. Consumer First Props.*, 2009 WL 3515648, at *2 (E.D. Wis.

10

Oct. 28, 2009) (quoting *Hoesley v. La Crosse VFW Chapter*, 175 N.W.2d 214, 215 (Wis. 1970)). For this reason, in *Lewis*, Judge Stadtmueller rejected the defendant's argument that "that the inadvertent inversing of [the defendant's] first and middle name" was "fatal to plaintiffs' complaint." 2009 WL 3515648 at *2.

Here, Soaren Management's argument is even weaker than in *Lewis* because the Complaint properly identifies the name of the defendant, Soaren Management, LLC. The Complaint not only properly identifies Soaren Management, but it quotes from its current website as part of the allegations against it. (Compl. ¶ 128.) In other words, the Complaint leaves no doubt about "the identity of the party intended to be sued." *Hoesley*, 175 N.W.2d at 215. Instead, it merely contains a *single* inaccurate allegation that Soaren Management is a Delaware limited liability company, as opposed to a limited liability company organized under the laws of the Big Valley Band of Pomo Indians of the Big Valley Rancheria. This single inaccurate description—in a 54-page complaint detailing how Soaren Management is the architect of this nationwide illegal lending scheme—does not create any doubt about the identity of the party intended to be sued. This is especially true considering that the Complaint correctly alleges that Soaren Management's offices are in "Las Vegas, Nevada, and Scottsdale, Arizona" (Compl. ¶ 7), as advertised on Soaren Management's current website.[4]

Soaren Management's position is also similar to an argument rejected by this Court in *Bowles.*, 5 F.R.D. 25. There, the complaint alleged that the defendant was "a foreign corporation licensed to do business in Wisconsin," and further alleged the defendant was "a New York corporation." *Id*. In its answer, the defendant clarified that it "was organized under the laws of the State of New Jersey, and that therefore the court lacked jurisdiction." *Id*. at 26. In response to a

---

[4] https://soaren.io/ (last visited on October 17, 2025).

request for leave to amend the complaint, the defendant objected and argued that the amendment "would be to substitute a new and distinct party defendant." *Id*. This Court rejected that argument, explaining: "True it is the complaint alleges defendant is a New York corporation and that such is an incorrect description; however, the allegation is merely surplusage." *Id*. The Court reached this conclusion because under the Federal Rules of Civil Procedure, "it was not necessary to aver the legal existence of an organized association of persons except to the extent required to show the [subject] jurisdiction of the court," which was conferred by a federal statute. *Id*. The Court further noted that the "the words 'New York' or 'New Jersey'" were "not a part of defendant's corporate name." *Id*.

So too here. Like in *Bowles*, the Complaint includes nothing more than a few words that inaccurately describe Soaren Management as a Delaware limited liability company, as opposed to a limited liability company organized under the laws of the Big Valley Band of Pomo Indians of the Big Valley Rancheria. And critically, the Complaint identified the proper name of the entity, Soaren Management, LLC, and correctly alleged its offices are in "Las Vegas, Nevada, and Scottsdale, Arizona." (Compl. ¶ 7.) Soaren Management also has not contested the robust allegations in the Complaint that Soaren Management and its employees "are the true operators of the Fineday usurious lending scheme and provide the day-to-day management, operation, investment and customer service functions of the enterprise from their headquarters in Arizona." (*Id*.) Naming the correct entity, the correct place where it does business, and the correct nature of its business "does not leave in doubt the identity of the party intended to be sued," even with the incorrect description. *Lewis*, 2009 WL 3515648 at *2.

Furthermore, the inaccurate description was not made in bad faith.[5] Rather, the inaccurate description occurred because Plaintiffs' counsel reasonably relied on the current information available from the Arizona Corporation Commission. Under Arizona law, "a foreign corporation wishing to 'transact business' in Arizona must be granted authority to do so by the Arizona Corporation Commission." *Leon v. Peterbilt Motors Co.*, 2019 WL 859580, at *2 (D. Ariz. Feb. 22, 2019). To obtain such permission, an entity must submit an "application containing information such as its date of incorporation and the address of its principal office." *Leon*, 2019 WL 859580 at *2 (quoting A.R.S. § 10-1503(C)). This statute further requires an entity to provide "[t]he name of the state or country under whose law it is incorporated." A.R.S. § 10-1503(A)(2). And when any of this information is "amended or restated by merger or otherwise," the foreign entity must deliver such documents and "amend its application for authority," including "if any of the following occurs . . . The foreign corporation changes its state or country of incorporation." *See* A.R.S. § 10-1504.

---

[5] Soaren Management's accusation of bad faith is both illogical and unfounded. Among other things, Soaren Management summarily contends that Plaintiffs' counsel "deliberately pled against the wrong entity as part of a strategy to concoct a basis for jurisdictional discovery as to Soaren." (ECF No. 31-1 at 13.) This accusation makes little sense. Again, Plaintiffs' counsel simply relied on the current records of the Arizona Corporation Commission, as well as the absence of any information about Soaren Management on Big Valley's website. And while Soaren Management says Plaintiffs' counsel should have known because of prior litigation in the *Dearry* case, that case was four years ago and companies routinely change jurisdictions. It was entirely reasonable for Plaintiffs' counsel to rely on the current records from the Arizona Corporation Commission, where Soaren Management is headquartered and operates its business.

And regardless, identifying Soaren Management as a Delaware entity—as opposed to an entity formed under the laws of Big Valley—makes no difference as to any of the issues in this motion. And other than broadly lodging this serious accusation, Soaren Management provides no explanation for how the incorrect description could somehow enhance or impact a request for jurisdictional discovery. It seemingly would have the opposite effect.

Given that Soaren Management's website identifies its location as 7020 E. Acoma Drive, Scottsdale, Arizona, Plaintiffs' counsel utilized the website for the Arizona Corporation Commission to determine Soaren Management's current state of incorporation. The Arizona Corporation Commission's website indicated that Soaren Management was "active," in "good standing," and that its "domicile state" was Delaware. **Exhibit 1**. Relying on this information, as well as other publicly available information,[6] Plaintiffs' counsel identified Soaren Management as a Delaware limited liability company.

Plaintiffs' counsel also checked the website of the Big Valley Band of Pomo Indians. That website identifies all four entities—Big Valley Rancheria Smoke Shop, Mission Growth Medicinals, Big Valley Market & Fuel, and Konocti Vista Casino Resort—as its "tribal enterprises."[7] The absence of Soaren Management from that list, coupled with Soaren Management's website, further caused Plaintiffs' counsel to use the current information listed by the Arizona Corporation Commission.

For the foregoing reasons, Soaren Management's request for dismissal pursuant to Rule 12(b)(6) should be denied.

### III. Soaren Management's request to dismiss pursuant to Rule 12(b)(4) should be denied because the summons was correct in all respects.

Next, Soaren Management recycles its same argument in the form of a request for dismissal pursuant to Rule 12(b)(4), which allows for dismissal for "insufficient process." Fed. R. Civ. P. 12(b)(4). "Rule 12(b)(4) motions challenge the form of process whereas Rule 12(b)(5) motions

---

[6] Soaren Management's website indicates that it is "a wholly owned subsidiary of the Big Valley Band of Pomo Indians," but that does not absolve compliance with A.R. S. § 10-1503(A)(2). Regardless of who owns the stock of Soaren Management, any foreign entity doing business in Arizona must register with the Arizona Corporation Commission.

[7] https://www.bvrancheria.com/businesses (last visited on October 21, 2025).

challenge the manner in which the process was served." *Hobbs v. Sheskey*, 2024 WL 1138276, at *4, n. 6 (E.D. Wis. Mar. 15, 2024) (quoting *Holmes v. Social Security Administration*, 2022 WL 2080336, at *2 (C.D. Ill. Apr. 14, 2022)).[8]

To succeed on a motion under Rule 12(b)(4), the party must challenge the form or content *of the summons*, as opposed to an allegation in the complaint. S*ee, e.g., Bilal v. Rotec Indus., Inc.*, 2004 WL 1794918, at *4 (N.D. Ill. Aug. 5, 2004) ("In contrast to Rule 12(b)(5), Rule 12(b)(4) is concerned with the form of the summons as dictated by Rule 4(a) and 4(b)."). "Deficiencies cognizable under Rule 12(b)(4) include errors in naming the proper defendant, failing to specify the number of days allotted for defendant to answer, and failure to obtain a court seal or signature." *Knox v. Pendergast*, 2007 WL 1413681, at *3 (E.D. Wis. May 11, 2007) (citing *O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993)). "A motion challenging sufficiency of process under this rule *must point out specific instances* where the plaintiff has failed to comply with the requirements of Rule 4." *Id*. (emphasis in original) (citing *O'Brien*, 998 F.2d at 1398).

Here, Soaren Management argues that "[a]n error naming the proper defendant gives rise to a motion to dismiss for insufficient process." (ECF No. 31-1 at 14 (citing *Knox*, 2007 WL 1413681at *3).) After stating this rule, Soaren Management argues that "*[a]ll allegations in the Complaint* are against DE-Soaren and not Soaren," and, thus, "by failing to name the proper party, service was insufficient, requiring dismissal." (*Id.* (emphasis added).)

This challenge should be rejected because the summons complies with Rule 4 in every respect. More specifically, the summons identifies the proper name of the defendant: Soaren Management, LLC. This is the precise name that it used when it registered to do business with the

---

[8] Soaren Management does not challenge the manner in which process was served because it agreed to waive service. (*See generally* ECF No. 17.)

Arizona Corporation Commission. And as reflected by the affidavit of Soaren Management's counsel, Section 1 of the Articles of Organization confirm that "the name of the Company is: Soaren Management, LLC." (ECF No. 31-2 at 4.)

There is no error in naming the proper defendant in the Summons (or the Complaint). For example, Plaintiffs did not name "Soaren Management of Delaware," as opposed to "Soaren Management of Big Valley." Just as in *Bowles*, the proper party is before the Court because "Soaren Management, LLC" is the proper name and its jurisdiction of formation is "not a part of defendant's corporate name." *Bowles*, 5 F.R.D. at 26 (explaining that the "words 'New York' or 'New Jersey'" were not part of the name and, therefore, defendant had been correctly named despite the incorrect description of the jurisdiction).

Soaren Management's argument conflates an error in naming the proper defendant in the summons with an incorrect description of its jurisdiction of formation in the Complaint. The former may be grounds for dismissal (or leave to amend). The latter is irrelevant to a Rule 12(b)(4) motion, which concerns the "form of process." Here, there is no error in the process as it correctly identifies the defendant as "Soaren Management, LLC," which is its proper name. (*See* ECF No. 12.) Thus, the Rule 12(b)(4) challenge should be denied.

### IV. Soaren Management's request to dismiss pursuant to Rule 12(b)(2) should be denied for similar reasons.

#### A. The Complaint's factual allegations must be taken as true.

"In the federal courts, the judicial approach to considering a question of personal jurisdiction is well established." *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 781–82 (7th Cir. 2003). If "the issue is raised by a motion to dismiss and decided on the basis of written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). And

unless the defendant submits "evidence opposing the district court's exercise of personal jurisdiction," a court must "take as true all well-pleaded facts alleged in the complaint[.]" *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019) (quoting *Tamburo*, 601 F.3d at 700).

**B. Other than its jurisdiction of formation, Soaren Management failed to submit any evidence refuting the facts alleged in the Complaint.**

Usury—the practice of lending money at unreasonably high rates of interest—"is an ancient crime by which the powerful exploit the most poor and desperate." *Dunn v. Glob. Tr. Mgmt., LLC*, 2020 WL 7260771 (M.D. Fla. Dec. 10, 2020). And "[a]s ancient as the practice of usury and loansharking may be, equally old are circumvention schemes to avoid its prohibition." *Id*.

The Complaint alleges that this "case involves one of those schemes, which is commonly referred to as a tribal lending' business model, or more colloquially, as a 'rent-a-tribe' scheme, a "recent incarnation of payday lending companies regulation-avoidance." (Compl. ¶ 2 (quoting Nathalie Martin & Joshua Schwartz, *The Alliance Between Payday Lenders and Tribes: Are Both Tribal Sovereignty and Consumer Protection at Risk?*, 69 Wash. & Lee L. Rev. 751, 785 (2012)).) Under this model, "Non-tribal payday lenders and third-party funders wishing to use this model to circumvent state legal prohibitions on usurious lending go searching for a small, easily dominated tribe that will be willing to serve as the consumer-facing façade for the usury scheme, in return for receiving a small portion of the revenue generated (the 'rent' referred to in the 'rent-a-tribe' label) and, often, some call-center jobs." (*Id.* ¶ 3.)

Although Fineday "holds itself out as a tribal lending entity owned and operated by the Menominee Indian Tribe of Wisconsin," the Complaint alleges that Soaren Management "non-tribal owners, managers, and investors, are the true operators of the Fineday usurious lending scheme and provide the day-to-day management, operation, investment, and customer service

functions of the enterprise from their headquarters in Arizona, far from the Tribe's reservation." (Compl. ¶¶ 4, 7; *see also id*. ¶ 30 ("Soaren Management is instrumental in the creation, operation, and management of the Fineday usurious lending enterprise described herein."); *id*. ¶ 31 (alleging Soaren Management, its owners, and officers are the "true drivers of Fineday's lending operations").)

Consistent with these overarching allegations, the Complaint specifically alleges that Soaren Management has "entered into agreements with the Tribe, Defendants, Fineday, Wolf River, and others to make and collect on usurious loans in states across the country, including in Wisconsin, and to keep their identity hidden from consumers and regulators." (Compl. ¶ 125.) The Complaint further alleges that "Soaren Management is the operator of Fineday's website, which is the sole avenue through which Fineday accepts applications for, issues, and services its usurious loans." (*Id.* ¶ 126.)[9] In addition to running the online lending website, Soaren Management is alleged to provide "the primary—if not sole—source of funds for Fineday's operations, and they produce all of the leads for Fineday; manage the technology and call centers that issue and service Fineday's loans; collect payments on the loans; and sell off nonperforming debts." (*Id.* ¶ 127.)

## C. Soaren Management's personal jurisdiction argument repackages its incorrect argument that Plaintiffs sued the wrong entity.

None of the allegations in Section B are refuted or contested—by evidence or otherwise. Instead, Soaren Management recycles its same argument in the form of a request for dismissal pursuant to Rule 12(b)(2), which allows for dismissal for lack of personal jurisdiction. Fed. R. Civ.

---

[9] While such information would typically be publicly available, it is alleged that "Soaren Management has also concealed the ownership of the Fineday website using a domain proxy service, concealing its role in operating and maintaining the site." (Compl. ¶ 138.)

P. 12(b)(2). According to its submission, there are not "any allegations against Soaren," and, thus, "Plaintiffs cannot even overcome the most basic expectation of alleging facts to support any form of personal jurisdiction." (ECF No. 31-1 at 15.)[10]

Again, this "gotcha" argument should be rejected because the Complaint contains sufficient *substantive* allegations showing that the Court has personal jurisdiction over Soaren Management, who failed to properly update its domicile information with the Arizona Corporation Commission. Soaren Management's failure to maintain accurate records with the Arizona Corporation Commission caused the inaccurate, yet *immaterial* allegations regarding formation. That immaterial allegation does not negate all of the other substantive allegations regarding Soaren Management's role, which must be taken as true at this juncture. Soaren Management cannot cast all of these allegations aside simply because of an incorrect description of where it is organized (which was caused by Soaren Management's own failure to comply with Arizona law).

Once this framework is properly understood, the foregoing allegations more than satisfy the Plaintiffs' burden of making a prima facie showing of personal jurisdiction. And since Soaren Management does not raise any other arguments against personal jurisdiction in its opening brief, it has forfeited any other challenges. *Flambeau, Inc. v. GDL Brokerage, Inc.*, 2019 WL 6877564, at *3 (W.D. Wis. Dec. 17, 2019) ("[C]hallenges to personal jurisdiction may be waived . . . and arguments raised for the first time in a reply brief are forfeited."); *Voss v. Voss*, 621 F. Supp. 3d 816, 827 (E.D. Mich. 2022) ("[T]he claim for lack of personal jurisdiction is waived because Defendant did not develop an argument for it."); *see also Batson v. Live Nation Ent., Inc.*, 746 F.3d

---

[10] This section of Soaren Management's brief also takes issue with the identification of Kraken Holdings, LLC, as Soaren Management's manager. ECF 31-1 at 15. But here again, Plaintiffs' counsel relied on information from the Arizona Corporation Commission, which has a section entitled "Principal Information" and identifies Kraken Holdings as the "manager." Exhibit 1.

827, 833 (7th Cir. 2014) (argument was "forfeited because it was perfunctory and underdeveloped").

### D. The Court may exercise personal jurisdiction under RICO's nationwide service of process provision.

And even if Soaren Management hadn't forfeited any other challenges to personal jurisdiction, this Court clearly has personal jurisdiction over Soaren Management because RICO "contains an explicit grant of nationwide service" of process. *Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668, 672 (7th Cir. 1987). Where a federal statute authorizes nationwide service of process, it alters the typical personal jurisdiction analysis, which requires "minimum contacts" between the defendant and the forum state. Unlike the typical analysis, when a federal statute authorizes nationwide service of process, "the personal jurisdiction analysis turns on whether the defendant has sufficient minimum contacts with the United States as a whole, rather than just with the forum state." *Leibovitch v. Islamic Republic of Iran*, 188 F. Supp. 3d 734, 752 (N.D. Ill. 2016), *aff'd*, 852 F.3d 687 (7th Cir. 2017); *see also Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1035 (7th Cir. 2000) (finding that, in the context of ERISA, "[the Seventh Circuit] ha[s] concluded that nationwide service under other statutes is proper, as long as the defendants have adequate contacts with the United States as a whole"); *Diamond Mortg. Corp. v. Sugar*, 913 F.2d 1233, 1244 (7th Cir. 1990) ("[T]he sovereign exercising its authority over the [defendants] is the United States," and therefore "whether there exist sufficient minimum contacts between the [defendants] and the State of Illinois has no bearing upon whether the United States may exercise its power over the [defendants] pursuant to its federal question jurisdiction."); *Siswanto v. Airbus*, 153 F. Supp. 3d 1024, 1027–28 (N.D. Ill. 2015) ("[W]hen the basis of personal jurisdiction involves a statute providing for nationwide service of process . . . [t]he relevant minimum contacts in these instances simply lie with the United States as a whole

and not just the forum state (here, Illinois)." (internal citation omitted)); *Johnson Controls, Inc. v. Exide Corp.*, 2000 WL 1849293, at *1 (N.D. Ill. Dec. 15, 2000) ("By thus authorizing the nationwide service of process, Section 1965(b) creates personal jurisdiction over any person within the United States.")).

There is no shortage of case law applying this rule to participants in tribal lending schemes. *Weidley v. Aaniiih Nakoda Fin. LLC*, 787 F. Supp. 3d 1255, 1274 (N.D. Ala. 2025) (explaining that "so long as the underlying RICO claim is not 'insubstantial, implausible, foreclosed by prior decisions of this Court, or' meritless, courts have personal jurisdiction over that claim and all related claims" because RICO provides for nationwide service of process) (citation omitted); *Blackburn v. A.C. Israel Enters.*, 2023 WL 4710884, at *37 (E.D. Va. July 24, 2023) ("[T]he civil RICO statute's nationwide service-of-process provision 'allows for personal jurisdiction in any federal court that properly effectuates service.'") (quoting *Galloway v. Martorello*, 2022 WL 17325982, at *2 (E.D. Va. Nov. 29, 2022)); *MacDonald v. CashCall, Inc.*, 2017 WL 1536427, at *15 (D.N.J. Apr. 28, 2017) (same); *Fitzgerald v. Wildcat*, 687 F. Supp. 3d 756, 793 (W.D. Va. 2023) (same). As in these cases, there is no constitutional concern because Soaren Management is a domestic company, thereby satisfying the national contact's test.

In short, personal jurisdiction is appropriate here because RICO provides for nationwide service of process, and especially as Wisconsin is the epicenter of the lending scheme. This is likely the reason why Soaren Management has not genuinely challenged the Court's personal jurisdiction other than its incorrect argument that the Plaintiffs sued a nonexistent entity.

## V. Request for Leave to Amend.

If the Court grants any portion of this motion, Plaintiffs request leave to file an amended complaint to address any deficiencies in their claims. Although Soaren Management argues that

21

the claims should be dismissed with prejudice, "plaintiffs enjoy leave to amend whenever 'justice so requires' and, as a matter of course, almost always get an opportunity to amend their complaints at least once." *Odogba v. Wisconsin Dep't of Just.*, 22 F. Supp. 3d 895, 914 (E.D. Wis. 2014) (quoting *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1024 (7th Cir. 2013) (citing *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir.2011) ("[a] plaintiff ordinarily retains the ability to amend his complaint once as a matter of right, even after a court grants a motion to dismiss.")); *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir.2010) ("[a] plaintiff is entitled to amend the complaint once as a matter of right, Fed. R. Civ. P. 15(a), and a court should 'freely give leave [to file an amended complaint] when justice so requires.' Fed. R. Civ. P. 15(a)(2)."); *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008) ("[a]n order dismissing the original complaint normally does not eliminate the plaintiff's right to amend once as a matter of right.").

As one court has explained, "the cases hold where the words of the Complaint sought to be amended refer only to the description or identity of the defendant and are not a part of the defendant's corporate name, such as words referring to the state of incorporation of the defendant, such words are freely amendable." *Paramount Film*, 166 F. Supp. at 222 (gathering cases). This well-established rule should apply here, especially considering that the incorrect description was caused by Soaren Management's failure to maintain proper records with the Arizona Corporation Commission as required by the law where its headquarters are located.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the motion be denied.

Respectfully submitted,
**PLAINTIFFS,** *individually and on behalf of all others similarly situated*

By: */s/ Andrew J. Guzzo*
Kristi Cahoon Kelly (*pro hac vice*)

Andrew J. Guzzo (*pro hac vice*)
**KELLY GUZZO PLC**
3925 Chain Bridge Road, Suite 202
Fairfax, Virginia 22030
Telephone: (703) 424-7572
Facsimile: (703) 591-0167
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com

Thomas Scott-Railton
Attorney Bar Number: 5687330
Attorneys for Plaintiffs
**GUPTA WESSLER LLP**
Email: thomas@guptawessler.com
2001 K Street NW, Suite 850 North
Washington, DC 20001
Telephone: (202) 888-1741
Facsimile: (202) 888-7792

*Counsel for Plaintiffs*