# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
### Green Bay Division

ALICE GILL, RACHEL BUTLER,
MORGAN RICE, PATREESE WILLIAMS,
JESSE WILSON, GLORIA APPIAH,
DOROTHEA FULMORE, DARLENE
MOORE, JEROME COLE, RUBEN
VILLANUEVA, JOSE ROSARIO,
ANDREW FUENTES, SPENCER
THOMPSON, JOSEPH GREENWOOD,
KATHLEEN ZACCHEO, JEREMY
RICKABAUGH, and NICOLE MATOS, *on
behalf of themselves and all individuals
similarly situated*,

     Plaintiff,

   v.

SOAREN MANAGEMENT, LLC, *et al.,*

     Defendants.

Court File No. 1:25-cv-489

Judge Byron B. Conway

### <u>TRIBAL DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY, OR IN THE ALTERNATIVE, TO DISMISS UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6)</u>

# TABLE OF CONTENTS

**Page**

I. ARGUMENT ................................................................................................1

    A. THE SEVENTH CIRCUIT'S DECISION IN *HARRIS*..............................1

    B. INTERVENING AUTHORITY................................................................4

II. CONCLUSION ..........................................................................................6

i

Defendants Gena Kakkak, Joey Awonohopay, Spencer Gauthier, Michael Fish Jr., Dana Waubanascum, Joan Delabreau, Rebecca Brunette, Daynell Grignon, and Randy Chevalier, Crystal Chapman-Chevalier and Wolf River Development Company are referred collectively as the "Tribal Defendants." Tribal Defendants submit this supplemental memorandum in support of their Motion to Compel Arbitration and Stay, or in the Alternative, to Dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), (*see* Doc. 18), pursuant to the Court's Order requesting briefing on: (1) the relevance, if any, of the Seventh Circuit's recent decision in *Harris v. W6LS, Inc.*, 177 F.4th 777 (7th Cir. June 5, 2026) to Tribal Defendants' pending motion, and (2) any other intervening authority that may be relevant to the Court's determination. *See* Doc. 48. Tribal Defendants address each issue below.

## I. <u>ARGUMENT</u>

### A.    THE SEVENTH CIRCUIT'S DECISION IN *HARRIS*

The Seventh Circuit's recent decision in *Harris* does not change the outcome, or more importantly Tribal Defendants' arguments with respect to compelling arbitration. *See Harris v. W6LS, Inc.*, 177 F. 4th 777 (7th Cir. June 5, 2026). *Harris*'s narrow holding, which found the parties did not mutually assent to what the Court deemed an essential term in that loan agreement––based on the Otoe-Missouria Tribe's enacted code at the time the loan agreement was signed—simply does not apply here.

Specifically, in *Harris*, the Seventh Circuit held that the arbitration and delegation provisions were invalid because there was "no meeting of the minds as to this essential element of their agreement to arbitrate." *Id.* at 786. Although the loan agreements required an arbitrator to apply "Tribal law and applicable federal law," no tribal contract law of the Otoe-Missouria Tribe

existed at the time the loan agreement was formed,[1] and according to the Seventh Circuit, federal law supplies no substantive law governing contract formation or interpretation. *Id.* at 785. Accordingly, the Seventh Circuit could not "ascertain what the parties have agreed to do" rendering it not "reasonably certain" that the plaintiffs "mutually assented to the delegation or arbitration terms." *Id.* at 784.

Although the district court in *Harris* relied on the prospective-waiver doctrine in denying the motion to compel, the Seventh Circuit declined to reach that issue, instead, the court left "the untrodden ground of prospective waiver of state-law rights post-Viking River Cruises . . . for another day." *Id.* at *7. Thus, *Harris*' holding—and therefore its applicability to this case—is limited to whether, at the time of contract formation, contractual canons are addressed by the law cited within the governing law provision.[2]

Here, the Loan Agreements specify that the agreement is governed by "[t]he laws of the Tribe and applicable federal law." *See* Lierz Decl. Ex. A at 10 (Doc. 20-1); Ex. C at 10 (Doc. 20-3); Ex. Q at 14 (Doc. 20-17). Distinguishable from *Harris*, at the time of contract formation, the Tribe had an enacted contract code[3] that addresses the requisite contractual canons to form

---

[1] Of note, "Tribal law" was defined and referred to "law enacted by the Otoe-Missouria Tribe or the Otoe-Missouria Consumer Finance Services Regulatory Commission." *Harris*, 177 F.4th at 781.

[2] Any effort to extend *Harris* beyond this limited holding—particularly on public policy grounds—should be rejected, as the Court must apply *Harris* as written.

[3] Notwithstanding that it has, the Tribe does not concede that it must codify contract formation principals. The Court in Harris was limited by a definition of "Tribal law." Here, the Loan Agreements are not similarly limited. *See e.g.*, Lierz Decl. Ex A. As with other jurisdictions, Tribal law includes common law, which has been developed by the Menominee Tribal Court and Menominee Supreme Court since approximately August 2, 1979. *See* Judiciary and Law and Order Code §§ 120-1, *et seq.*, which is publicly available at https://ecode360.com/13784348#13784348 (last visited July 2, 2026).

definiteness and mutual assent for the governing law provision.  Because of this, *Harris* does not foreclose compelling this case to arbitration and Tribal Defendants' motion must be granted.

The Tribe has multiple ways in which it has codified contract formation. First, on November 4, 2010, the Tribe adopted Chapter 25, titled "Contracts," whereby the Tribe adopted substantive contract doctrines. *See* Contracts, §§ 25-1, *et seq.*, available at https://ecode360.com/15110527 (last visited June 22, 2026).  Importantly, Chapter 25-3 expressly provides that a "contract" under Tribal law is: "Any and all written agreements that consist of an offer, consideration and acceptance . . ." *See id.*

Alternatively, and independently, the Tribe incorporated these same principles through its adoption of Chapter 21, titled "Commercial Code, Uniform," on May 1, 2008 and included its use of Wisconsin's Uniform Commercial Code. *See* Commercial Code, Uniform, §§ 21-1 *et seq.*, available at https://ecode360.com/15110527 (last visited June 22, 2026) (adopting "[t]he Uniform Commercial Code as in effect from time to time in the State of Wisconsin").  Relevant here, the Wisconsin Uniform Commercial Code includes core contractual doctrines. For example, it codifies mutual assent by defining an "agreement" as the "bargain of the parties in fact, as found in their language or inferred from other circumstances, including course of performance, course of dealing, or usage of trade," and defines a "contract" as "the total legal obligation that results from the parties' agreement." *See* Wis. Stat. §§ 401.201(2)(b), (g). It further provides that, unless displaced, "the principles of law and equity," including those governing capacity to contract, "shall supplement its provisions." Wis. Stat. § 401.103(2). Taken together, these provisions demonstrate that the Wisconsin Uniform Commercial Code incorporates the fundamental elements of contract law, including mutual assent, interpretive principles, and common-law doctrines governing enforceability.

3

Indeed, district courts within the Seventh Circuit have held that incorporating Wisconsin law is sufficient to codify contract formation. *See Taylor v. Niswi, LLC*, No. 1:25-cv-00918-TWP-MJD, 2026 WL 1674799, at *4 (S.D. Ind. June 9, 2026) (report and recommendation) (distinguishing *Harris* and holding that the Tribal Code's incorporation of the Wisconsin Consumer Act—which itself incorporates the Uniform Commercial Code—provided a sufficiently definite body of contract law to establish mutual assent and contract defenses).

Accordingly, either through Chapter 25's express definition of contract formation or Chapter 21's incorporation of the Wisconsin Uniform Commercial Code, the Tribe ensured that a comprehensive and well-established body of substantive contract law governed agreements at the time of contracting.

Therefore, unlike in *Harris*, the Tribe has enacted contractual canons in its Tribal code well-before Plaintiffs entered into the Loan Agreements (*i.e.*, June 2, 2022, to December 4, 2024). Accordingly, the governing law was "reasonably certain" at the time Plaintiffs entered into the Loan Agreements.[4]

**B.      INTERVENING AUTHORITY**

District courts overwhelmingly continue to enforce arbitration provision in tribal lending agreements. Since October 2025, *five* courts have compelled arbitration under agreements materially similar to those entered into by Plaintiffs:

1.      In *Wood v. Niswi, LLC*, No. 4:25-CV-00046-GNS, 2026 WL 1783843 (W.D. Ky. June 22, 2026), the court compelled arbitration of a borrower's class claims and rejected the borrower's prospective waiver argument finding that such argument can be raised "at the

---

[4] It should also be noted that at the time the Loan Agreements were formed the Tribe enacted Chapter 15 on Arbitration on May 1, 2008. *See* Arbitration, §§ 15-1, *et seq.*, available at https://ecode360.com/13728288#13728288 (last visited June 22, 2026).

arbitration-enforcement state only if there is no uncertainty that the choice of law would preclude otherwise applicable [] substantive statutory remedies") (quoting, *Wood v. Ascend Loans, LLC*, 821 F. Supp. 3d 821 (W.D. Ky. 2026));

2. In *Taylor v. Niswi, LLC,* No. 1:25-cv-00918-TWP-MJD, 2026 WL 1674799, at *4 (S.D. Ind. June 9, 2026), the court, applying Sevent Circuit precedent and distinguishing *Harris*, found that the tribal code at issue had a well-developed body of law governing contract formation and defenses, such that the borrower's challenge to the delegation provision fails;

3. In *Wood v. Ascend Loans, LLC*, 821 F. Supp. 3d 821 (W.D. Ky. 2026), the court held that the delegation provision in a tribal loan agreement was not unenforceable due to prospective waiver of state law because the agreement called for application of the Federal Arbitration Act at the arbitrability stage, which allowed the borrower to raise choice-of-law objections with the arbitrator;

4. In *Fisher v. Welch*, No. 25-cv-1698, Doc. 65 (S.D. Cal. Feb. 17, 2026),[5] the court found that the parties entered into valid arbitration agreements and that those agreements broadly covered the borrower's claims, including RICO and related statutory causes of action. The court concluded that any challenges to the legality of the underlying tribal lending scheme or the enforceability of the arbitration agreement based on a choice-of-law prospective waiver argument, was not a specific challenge to the delegation provision itself. The court compelled arbitration of plaintiff's claims;

5. In *Bridges v. Raines*, No. 24-cv-00087-MR-WCM, 2025 WL 3565343 (W.D.N.C. Dec. 10, 2025), the court, applying relevant Fourth Circuit authority, granted a motion to compel

---

[5] Given the opinion is unpublished, attached hereto as **<u>Exhibit 1</u>**, is a true and accurate copy of the Order entered in *Fisher* on February 17, 2026.

arbitration "conclude[ing] that the choice-of-law provisions contained in the Loan Agreements do not implicate the prospective waiver doctrine," as the Loan Agreement provides for application of federal law and the tribal defendants readily conceded that "under the Loan agreement, 'federal law is equally available along with tribal law' in the arbitration."[6]

To Tribal Defendants' knowledge, the ***only*** intervening case that has found delegation and arbitration provisions unenforceable is *Bradby et al.*, v. *Koetting et al.*, No. 3:25CV26 (RCY), 2026 WL 1762692 (E.D. Va. June 18, 2026)—an outlier that applied selective Fourth Circuit authority not controlling here. *See id.* at *7. Although the court discussed *Harris*, it did so in the context of the prospective waiver doctrine—not the issue of contract formation which was the central issue in *Harris*. Notably, *Bradby* was decided only a few months after *Bridges* and purported to apply the same Fourth Circuit precedent, yet arrived at a contrary result. *Bradby* is therefore not persuasive authority and constitutes a clear departure from the approach adopted by other district courts within the Fourth Circuit.

## II. <u>CONCLUSION</u>

For the foregoing reasons, the Court should compel Plaintiffs to arbitrate their claims individually, and stay this matter accordingly. Alternatively, the Court should dismiss Plaintiffs'

---

[6] Notably, in Plaintiffs' opposition to compel arbitration, they suggest that the prospective waiver doctrine has been expanded to include state law rights, citing to the Fourth Circuit's decisions in *Hengle v. Treppa*, 19 F.4th 324, 339 (4th Cir. 2021), *Gibbs v. Haynes Invs., LLC,* 967 F.3d 332, 340 (4th Cir. 2020), *Dillon v. BMO Harris Bank, N.A*., 856 F.3d 330, 336 (4th Cir. 2017), *Hayes v. Delbert Servs. Corp*., 811 F.3d 666, 675 (4th Cir. 2016). *See* Doc. 24 at 2–3, 8, 10–12. In *Bridges,* plaintiff tried the same tactic: citing to *Hengle, Gibbs, Hayes and Dillion*, all from the Fourth Circuit, to advance the failed proposition that the prospective waiver doctrine ensured preservation of state substantive rights. 2025 WL 3565343 *3-4 (W.D.N.C. Dec. 10, 2025). The court, after analyzing the cases, rejected this argument finding that "the Fourth Circuit has held that arbitration agreements which apply tribal law to the exclusion of any federal substantive statutory remedies are unenforceable as a prospective waiver of federal rights," so arbitration agreements are enforceable if they "do not, either explicitly or implicitly, operate to prospectively waive Plaintiffs' federal statutory rights." *Id*. at *4

6

claims against the Tribal Defendants for lack of subject matter jurisdiction and failure to state a

claim upon which relief may be granted.

Dated: July 2, 2026          **SPENCER FANE LLP**

*s/ Ariel K. Lierz*
Ariel K. Lierz, WI Bar # 1123908
100 South Fifth Street, Suite 2500
Minneapolis, Minnesota 55402
(612) 268-7000
(612) 268-7001 (facsimile)
alierz@spencerfane.com

and

Patrick J. McAndrews (Pro Hac Admission)
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
(816)474.8100
(816)474.3216 (facsimile)
pmcandrews@spencerfane.com

*Attorney for Tribal Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 2, 2026, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send a notice of the electronic filing to

all CM/ECF participants.

*s/ Ariel K. Lierz*
Ariel K. Lierz, WI Bar # 1123908
*Attorney for Tribal Defendants.*

**SPENCER FANE LLP**
100 South Fifth Street, Suite 2500
Minneapolis, Minnesota 55402
(612) 268-7000
(612) 268-7001 (facsimile)
alierz@spencerfane.com

7