**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**
**Green Bay Division**

| | |
|---|---|
| ALICE GILL, *et al.*, *on behalf of themselves and all individuals similarly situated,* : | |
| : | |
| Plaintiffs, : | |
| : | |
| v. : | Civil Action No. 1:25-cv-00489-BBC |
| : | |
| SOAREN MANAGEMENT, LLC, *et al.*, : | |
| : | |
| Defendants. : | |
| _____ : | |

### PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING RELEVANCE OF SEVENTH CIRCUIT'S DECISION IN HARRIS

Plaintiffs, by counsel, respectfully submit this supplemental brief addressing the relevance of the Seventh Circuit's decision in *Harris v. W6LS, Inc.*, Case No. 24-2056, __ F.4th __, 2026 WL 1641195, at *1 (7th Cir. June 5, 2026), pursuant to this Court's Order (ECF No. 48) dated June 12, 2026.

### BACKGROUND

On January 9, 2026, this Court entered an order, *sua sponte*, explaining that the *Harris* case pending before the United States Court of Appeals for the Seventh Circuit "presents many of the same questions as those raised in the motions currently pending before this court." ECF No. 44. The Court's Order further provided that the "proceedings in this matter are stayed pending resolution of that appeal." *Id*. Given the similarities between this case and *Harris*, none of the parties objected or opposed the entry of the stay.

On March 31, 2026, the Seventh Circuit published its initial opinion in *Harris*, which was amended by an opinion dated June 5, 2026, with the inclusion of a new footnote. *Harris v. W6LS, Inc.*, Case No. 24-2056, __ F.4th __, 2026 WL 1641195 (7th Cir. June 5, 2026). At that time, the

Seventh Circuit also denied the appellant's petition for a rehearing en banc, noting that "no judge in active service requested a vote on the petition for rehearing en banc and all members of the original panel have voted to deny rehearing and to issue an amended opinion." Case No. 24-2056 at ECF No. 57. Thereafter, this Court entered an Order granting the Plaintiffs' Motion to Vacate the Stay (ECF No. 45) and permitting supplemental briefing "addressing what, if any, relevance *Harris* or any additional intervening authority has to the pending motion to dismiss (ECF No. 31)."[1] For the reasons explained below, *Harris* not only bears directly on the issues in the Tribal Defendants' Motion to Compel Arbitration (ECF No. 18), but it controls the outcome, requiring denial of the request for arbitration.

## ARGUMENT

**I.      The Seventh Circuit's decision is dispositive on the enforcement of the delegation provision and arbitration agreement in this case.**

Just like this case, *Harris* involved an arbitration agreement in a tribal loan contract with a delegation provision that purported to provide for arbitration of: "claims or disputes arising from or relating in any way to: the interpretation, applicability, validity, arbitrability, enforceability, formation or scope of any Loan Agreement or this Arbitration Agreement." *Harris*, 2026 WL 1641195 at *1; *compare with* Gill Loan Agreement, ECF No. 20-1 at pg. 17 (delegation provision ostensibly providing that any dispute over the "validity and scope" of the arbitration agreement or

---

[1] Plaintiffs believe that the Court's reference to ECF No. 31 was a typographical error. That docket entry is the Motion to Dismiss filed by Defendant Soaren Management, LLC, who has not moved to compel arbitration of the claims against it. Given the narrow arguments raised by Soaren Management, Plaintiffs do not believe *Harris* has any relevance to that Motion to Dismiss at ECF No. 31. By contrast, *Harris* is highly relevant to the Motion to Compel Arbitration and Stay, or in the Alternative, to Dismiss Under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (hereafter "Motion to Compel Arbitration"), which was filed at ECF No. 18. That Motion to Compel Arbitration was filed by the Tribal Council Defendants, who are Gena Kakkak, Joey Awonohopay, Spencer Gauthier, Michael Fish, Jr., Dana Waubanascum, Joan Delabreau, Rebecca Brunette, Daynell Grignon, Randy Chevalier, and Crystal Chapman-Chevalier (hereafter, "Tribal Defendants").

"any claim or attempt to set aside this Provision" is subject to arbitration). And similar to this case, the arbitration agreement in *Harris* required an arbitrator to "use 'Applicable Law,'" which was defined elsewhere in the agreement as "'Tribal Law and applicable federal law,' to resolve" challenges to the delegation provision. *Harris*, 2026 WL 1641195 at *1; *compare with* ECF No. 20-1 at pg. 18 ("The arbitrator shall apply applicable substantive law consistent with the Governing Law set forth above[.]"); *see also id*. at 11 (governing law provision, which waives the application of any state laws and further provides that "Tribal law and applicable federal law shall exclusively apply to such dispute").

Despite the existence of the delegation provision, the Seventh Circuit held that "both the delegation provision and the Arbitration Agreement fail for the same reasons: both agreements, by selecting then-nonexistent tribal law and inapplicable 'federal law' of contract to control their disputes, lacked mutual assent at the time of contracting." *Harris*, 2026 WL 1641195, at *3. In reaching this conclusion, the Seventh Circuit explained that "[a]t the time of the contract, the bodies of law mentioned in the governing law provision—federal and tribal—provided no rule of contract formation and defense." *Id*. And even though the tribe had enacted multiple other laws, the Seventh Circuit found that those laws did not save the delegation provision or arbitration agreement because "the Otoe-Missouria Tribal Contract Code was completely nonexistent at the time the parties entered into the delegation and arbitration agreements." *Id*. Even the provision in the Otoe-Missouria Tribal Contract Code giving it retroactive effect could not give rise to mutual assent "at the time of contract." *Id.* at *4.

So too here. Just as in *Harris*, the Menominee Indian Tribe of Wisconsin has not enacted a tribal code of contract that "defines a contract and sets out the elements of contract formation, who can contract, defenses, a statute of frauds, and modes of interpretation." *Id*. at *2. Without such

3

laws, there cannot be "a 'meeting of the minds' as to an essential element of the parties' bargain to arbitrate: the substantive law that would bind the arbitrator." *Id*. at *5. Instead of such laws, the Tribal Defendants supplied this Court with two relevant sources of law when moving to compel arbitration: (1) the Menominee Tribal Consumer Financial Services Regulation; and (2) "Chapter 25" of the Menominee Code, which is entitled "Contracts." *See* ECF Nos. 21-4 & 21-5. Neither of these sources, however, establish a substantive body of contract law.

As for the Menominee Tribal Consumer Financial Services Regulation, *Harris* directly addressed a virtually identical argument from the appellants, who asserted that some "applicable tribal law did exist prior to the signing of the Loan Agreements, citing a Consumer Financial Services Ordinance that the Tribe adopted in 2018." *Id*. at *5, n.4. "But that ordinance," the Seventh Circuit explained, did not provide any "substantive rules of contract." *Id.* Instead, "beyond requiring that loan agreements include certain notices, [it] simply restates that '[t]he Loan is made within the Tribe's jurisdiction and governed by Tribal law and applicable federal law[.]'" *Id*. (citing Otoe-Missouria Tribe of Indians, Resolution OTMC #050341 § 6.2 (May 3, 2018), https://perma.cc/2X58-7UNN). Without agreed upon substantive rules of contract, parties "cannot have mutually assented to the delegation or arbitration terms." *Id.* at *5. The Menominee Tribal Consumer Financial Services Regulation is identical in this respect, as it provides no substantive rules of contract with which to resolve disputes over formation, assent, or unconscionability. *See* ECF Nos. 21-4. Accordingly, the parties here could not have mutually assented to the delegation or arbitration terms.

And while the section of the Code entitled "Contracts" may sound more promising at first blush for the Tribal Defendants, it fares no better when examined, because it too does not provide any substantive rules of contract. *See generally* ECF Nos. 21-4. Instead, this Code section only has

one article, and its express purpose "is to promote business opportunities" to tribal members "by providing preference in contracting opportunities provided by the Tribe and its charter entities." ECF Nos. 21-4 at § 25-1. Consistent with this, in a section entitled "Applicability," the Code further confirms that "[t]his article applies to all competitive internal funding source contracting opportunities available with the Tribe that are $50,000 and over and which are subject to the normal bidding process of the Tribe." *Id*. at 25-2. By its own terms, this Code does not apply to the loans at issue here. All the remaining portions of this section relate to these purposes, and none of them remotely attempt to establish the "elements of contract formation, who can contract, defenses, a statute of frauds, and modes of interpretation." *Harris*, 2026 WL 1641195, at *6. This Section, thus, cannot save the Tribal Defendants from their attempt to impose "sources of law (federal and tribal)" that failed to provide an arbitrator with "substantive rules of contract with which to resolve those future disputes." *Harris*, 2026 WL 1641195 at *6.

For the foregoing reasons, *Harris* controls the outcome of the Motion to Compel Arbitration (ECF No. 18), which must be denied.

II. **Although the Seventh Circuit used an alternative basis, it observed that *Viking River* "strongly suggests" the prospective waiver doctrine applies to waivers of state law.**

In the *Harris* litigation, the district court had denied the defendants' motion to compel arbitration by applying the prospective waiver doctrine to state laws. In particular, the district court found "both the delegation provision and the Arbitration Agreement unenforceable because compelling arbitration under exclusively tribal or 'applicable federal law' forced the plaintiffs to prospectively waive their substantive rights under Illinois law." *Harris*, 2026 WL 1641195 at *2. Although the Seventh Circuit did not ultimately decide whether the prospective waiver doctrine applies to waivers of state rights, its discussion of the doctrine clearly indicates that it applies to waivers of state law. *Id*. at *7.

Most notably, the Seventh Circuit explained that—in addition to the lack of a tribal contract code—the "defendants face another hurdle to enforcing the arbitration provision: the 'effective vindication' or 'prospective waiver' doctrine." *Id*. That doctrine, the court explained, "reflects the broad principle that arbitration provides only an alternative forum for resolving disputes and should not change the nature of the underlying rights at issue." *Id*. In other words, "[b]y agreeing to arbitrate a statutory claim, a party *does not forgo the substantive rights* afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Id*. (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). The defendants in *Harris* argued, however, "that the prospective-waiver doctrine only applies to rights created by federal law, not those created by state law." *Id.*

The Seventh Circuit noted that while there had been some difference of opinion on this question in the past, the Supreme Court in 2022 stated that the prospective waiver doctrine is "not … unique [to] federal statutes." *Id.* (quoting *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 653 n.5 (2022)). Just like in *Harris*, the Supreme Court explained that "[a]n arbitration agreement … does not alter or abridge substantive rights," with the result that "the FAA does not require courts to enforce contractual waivers of substantive rights and remedies." *Viking River*, 596 U.S. at 653. And just like in *Harris*, the defendants in *Viking River* argued that "the principle that the FAA does not mandate enforcement of provisions waiving substantive rights is limited to federal statutes." *Id*. at 653 n.5. The Supreme Court rejected that this in no uncertain terms. It explained that "[t]his argument is *erroneous*" because there "is not anything unique about federal statutes" that limits the application of the prospective waiver doctrine to only federal laws. *Id*. (emphasis added). "That is why," the Court added, it had previously addressed the doctrine in a case

concerning "claims arising under state law." *Id*. (citing *Preston v. Ferrer*, 552 U.S. 346, 359 (2008)).

Based on this language, the Seventh Circuit observed that *Viking River* "*at the very least strongly suggests* that an arbitration agreement like defendants' *impermissibly* forces borrowers to prospectively waive their state-law rights." *Harris*, 2026 WL 1641195 at *7 (emphases added). The Seventh Circuit further added that it took "no issue with the district court's decision to rely on prospective waiver, but we do not find it necessary to do the same" because the "motion to compel arbitration fail[ed] on ordinary formation principles." *Id.*

Plaintiffs further note that since the time of their original submission, another district court has denied a motion to compel arbitration based upon a finding a tribal loan contract prospectively waived state substantive rights. *See Bradby v. Koetting*, 2026 WL 1762692, at *6 (E.D. Va. June 18, 2026). The court concluded that the position that the prospective waiver doctrine applies to state law is "the most compelling approach in light of the Supreme Court's reasoning in *Viking River Cruises*." *Id*. at *6. The Supreme Court's reasoning in *Viking River* was based on the principle that "an arbitration agreement 'does not alter or abridge substantive rights; it merely changes how those rights will be processed,'" and the Court "unambiguously stated" that "[t]he basis of this principle is not anything unique about federal statutes." *Id.* (quoting *Viking River*, 596 U.S. at 653 & n.5). Because the contracts in *Bradby* "t[ook] all bodies of state law, and all state law remedies, off the table[,]" the defendants' position that the prospective waiver doctrine did not apply "would require ignoring the Supreme Court's clear pronouncement" in *Viking River*. *Id*. (citation omitted).

Like the contracts in *Bradby*, the Tribal Defendants' loan contracts here "require arbitrators to determine whether the arbitration provisions impermissibly waive state (and federal) substantive rights without recourse to state (and at least some, undefined proportion of federal) substantive

law." *Id*. at *7. Such tactics "directly contravene[] the foundational principle of the prospective waiver doctrine, that is, arbitration ought to provide an alternative forum for dispute resolution, without changing the nature of the underlying rights at issue." *Id*. (citing *Harris*, 2026 WL 1641195 at *7). Because the delegation provisions and arbitration agreements within the loan contracts take this impermissible step, they are unenforceable.

**CONCLUSION**

The Seventh Circuit's decision in *Harris* is fatal to the Motion to Compel Arbitration. The Court should deny the Motion.

Respectfully submitted,
**PLAINTIFFS,** *individually and on behalf of all others similarly situated*

By: */s/ Andrew J. Guzzo*
Kristi Cahoon Kelly
Andrew J. Guzzo
**KELLY GUZZO PLC**
3925 Chain Bridge Road, Suite 202
Fairfax, Virginia 22030
Telephone: (703) 424-7572
Facsimile: (703) 591-0167
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com

Thomas Scott-Railton
Attorney Bar Number: 5687330
**GUPTA WESSLER LLP**
Email: thomas@guptawessler.com
2001 K Street NW, Suite 850 North
Washington, DC 20001
Telephone: (202) 888-1741
Facsimile: (202) 888-7792
*Counsel for Plaintiffs*