# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
### Green Bay Division

ALICE GILL, *et al.*, *on behalf of themselves*     :
*and all individuals similarly situated,*     :
    :
          Plaintiffs,     :
    :
v.     :     Civil Action No. 1:25-cv-00489-BBC
    :
SOAREN MANAGEMENT, LLC, *et al.*,     :
    :
          Defendants.     :
_____ :

### PLAINTIFFS' RESPONSE TO TRIBAL DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION

Nothing in the Tribal Defendants' supplemental brief can avoid the conclusion that a straightforward application of the Seventh Circuit's recent decision in *Harris v. W6LS, Inc.*, 177 F.4th 777 (7th Cir. 2026), forecloses arbitration. *First*, under *Harris*, the arbitration contracts here fail for lack of mutual assent because the prohibition on the arbitrator applying state law means there is no available body of contract law to apply. ECF 51 at 2–5. In their supplemental brief, the Tribal Defendants recognize that arbitration must be denied if tribal law does not provide a body of contract law. ECF 50 at 2. But they fail entirely to identify any such actual body of law setting out basic contract principles and defenses, instead identifying a few narrow and irrelevant provisions. ECF 50 at 2–4.

*Second*, the Seventh Circuit in *Harris* acknowledged—as many courts now have in tribal arbitration cases—that the best understanding of the Supreme Court's decision in *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639 (2022), precludes arbitration contracts that attempt to prospectively waive state substantive rights. ECF 51 at 5–8. The Tribal Defendants don't engage with *Harris*'s discussion of basic arbitration principles and *Viking River*, instead relying on a

handful of mostly unpublished, out-of-circuit district court opinions. But these opinions are either distinguishable or inconsistent with precedent from the Supreme Court and the Seventh Circuit.

I.      *Harris* **forecloses both the delegation clause and arbitration provisions for lack of mutual assent.**

As the plaintiffs explained in their supplemental brief, ECF 51 at 2–5, *Harris* unambiguously held that both a "delegation provision and [an] Arbitration Agreement" will "fail" for lack of mutual assent when the contract precludes the application of state law and instead "select[s] then-nonexistent tribal law and inapplicable federal law of contract to control their disputes." 177 F.4th at 782.[1] To avoid this, tribal law must "set[] out" contract law principles such as "the elements of contract formation, who can contract, defenses, a statute of frauds, and modes of interpretation." *Harris*, 177 F.4th at 781, 785. The Tribal Defendants do not—and cannot— dispute that if tribal law does not provide "contractual canons," *Harris* forecloses arbitration. ECF 50 at 2. Instead, they attempt to distinguish *Harris* on the facts, asserting that tribal law does provide a code of contracts. But their arguments are foreclosed by the text of the Menominee Tribal Code on which they rely.

*First*, the Tribal Defendants point to Chapter 25 of the Tribal Code as purportedly adopting "substantive contract doctrines." ECF 50 at 3 (citing Menominee Tribal Code §§ 25-1, *et seq.*, https://ecode360.com/15110527); ECF 50 at 4–5. But by its express terms, Chapter 25 is not a general code of contracts: It narrowly governs "providing preference in contracting opportunities provided by the Tribe and its charter entities" for "competitive internal funding source contracting opportunities available with the Tribe" and "outside sources of funding for contracts/projects." Tribal Code §§ 25-1–2. And the provisions of Chapter 25 just regard the procedures and

---

[1] Unless otherwise noted, all internal quotation marks, citations, alterations, brackets, and ellipses have been omitted from quotations throughout this supplemental brief.

requirements for such contracting preferences. *Id.* §§ 25-1–12. While the Tribal Defendants tout Chapter 25's definition of contracts, it is limited to the term "[a]s used in this article." *Id.* § 25-3. The Tribal Defendants also misleadingly quote only part of the definition, which is again limited: "Any and all written agreements that consist of an offer, consideration and acceptance entered into *by a covered entity* for the purpose of procuring *services*, or *mixed goods and services*." *Id.* (emphases added). The Tribal Defendants don't assert that these contracts were made with the defined list of covered entities, nor that they are service contracts. *Id.* And nor does a generic reference to "offer, consideration and acceptance," Tribal Code § 25-3, set out contract law principles such as "who can contract, defenses, a statute of frauds, and modes of interpretation," much less relevant contract defenses, *Harris*, 177 F.4th at 781.

The Tribal Defendants' position appears to be that so long as there is any provision in the Tribal Code talking about "contracts"—no matter how plainly inapplicable or how little it actually provides any core contract principles—that is sufficient.[2] Unsurprisingly, they cite no authority for this proposition. Nor can the idea that an arbitrator could simply make up new principles of tribal contract law for consumer loans be squared with *Harris*'s admonition against attempting to "select a non-existent body of law, which is subject to later *invention*." 177 F.4th at 785.

*Second*, the Tribal Defendants claim that Chapter 21 of the Tribal Code provides the requisite substantive contract law because it supposedly incorporates the Wisconsin Uniform Commercial Code. ECF 50 at 4. But as an initial matter, the contract is explicit that the arbitrator must adjudicate any dispute "without regard to the laws of any state," which would include the

---

[2] The same goes for any other stray references to contracts in irrelevant sections in the Tribal Code. For example, even the arbitration provision does not appear to even apply to the contracts here. Tribal Code § 15-2. Nor does it provide any canons of contract law itself. *Id.* § 15-3.

3

Wisconsin UCC. ECF 20-1 at 11, 18. And in any event, the Tribal Defendants' argument is belied by the plain text of the Tribal Code. By its express terms, Chapter 21 only "appl[ies] to all security interests and collateral subject to the sovereign authority of the Tribe." Tribal Code § 21-4. The provisions of Chapter 21 only serve to "establish the method of the creation, the effect of perfection and nonperfection, priority among competing creditors, and enforcement of security interests in personal property." *Id.* § 21-1. And the Wisconsin UCC also isn't incorporated in full—it's only invoked to govern the creation and perfection of certain "security interest[s]." *Id.* § 21-3. That is entirely unrelated to the non-secured consumer credit transactions at issue here.

Not only that, but the Wisconsin UCC itself does not cover unsecured consumer credit transactions of the kind here, which are governed by the separate framework of the Wisconsin Consumer Act, Wis. Stat. §§ 422.101 *et seq. See also, e.g.*, *Burney v. Thorn Ams., Inc.*, 944 F. Supp. 762, 768 (E.D. Wis. 1996); *In re Crawford*, 397 B.R. 461, 466–67 (Bankr. E.D. Wis. 2008). Indeed, for that reason, the report and recommendation that the Tribal Defendants cite cuts against them, as it relied on the fact that the tribal law "fully incorporated the *Wisconsin Consumer Act*," which "governs consumer credit transactions." *Taylor v. Niswi, LLC*, 2026 WL 1674799, at *2 (S.D. Ind. 2026) (emphasis added). So even if the recommendation in *Taylor* were correct—which is itself doubtful—it only further undermines the Tribal Defendants.[3]

Finally, even where it does apply, the Wisconsin UCC does not codify a comprehensive code of contracts, but rather notes that separate bodies of contract law "shall *supplement* its

---

[3] In a footnote, the Tribal Defendants gesture vaguely to the possibility of tribal common law supplying the requisite canons of contract law, but they do not cite a single tribal court decision to support this argument. ECF 50 at 2 n.3. "[B]y failing to raise this issue other than by a passing reference in a footnote," the Tribal Defendants have "waived it." *United States v. White*, 879 F.2d 1509, 1513 (7th Cir. 1989); *see also, e.g.*, *Chavez v. Church & Dwight Co.*, 2018 WL 2238191, at *11 n.13 (N.D. Ill. 2018) ("The Seventh Circuit has reiterated time and again that skeletal and undeveloped arguments raised in footnotes are subject to waiver." (compiling cases)).

provisions." Wis. Stat. § 401.103(2) (emphasis added). Nor can the Tribal defendants rely on inapplicable provisions from elsewhere in the UCC, such Chapter 402, which applies to "sales" and is limited to "transactions in goods." Wis. Stat. § 402.102.

Accordingly, under a straightforward application of *Harris*, because no tribal code of contracts existed at the time of contracting and because the contracts here precluded that application of state contract law, both "the delegation provision and the Arbitration Agreement" "fail" because they "lacked mutual assent at the time of contracting." 177 F.4th at 782. Indeed, *Harris* directly forecloses any attempt to argue that this issue is delegated to the arbitrator. *Harris* expressly held that the lack of substantive contract law was a "challenge [to] the formation of the delegation *and* Arbitration Agreements specifically," which "a court must address" before it can order compliance with either the delegation provision specifically or the broader arbitration provisions. 177 F.4th at 782, 786–87 (emphasis added).

II.    **The delegation and arbitration provisions are also unenforceable under the prospective waiver doctrine, and none of Tribal Defendants' out-of-circuit, district court cases warrant a different result.**

While *Harris* is sufficient to deny the motion to compel arbitration for lack of mutual assent, it also further supports the conclusion that the delegation and arbitration provisions here violate the prospective waiver doctrine. As the plaintiffs explained in their prior letter, ECF 51 at 5–8, *Harris*'s discussion of fundamental arbitration principles and the Supreme Court's decision in *Viking River* led the Seventh Circuit to note that while it was not deciding the issue, *Viking River* "strongly suggests that an arbitration agreement" is unenforceable if it "impermissibly forces borrowers to prospectively waive their state-law rights." *Harris*, 177 F.4th at 787. This Court should reject the Tribal Defendants' attempts to ignore the Seventh Circuit's statement.

**A.** The Tribal Defendants offer no argument for why *Harris*'s discussion of basic arbitration principles and *Viking River* was incorrect—they just ask this Court to ignore the

5

considered opinion of three judges of the Seventh Circuit. ECF 50. In this same vein, the Tribal Defendants have argued previously that this Court should ignore the Supreme Court's discussion in *Viking River* of the prospective waiver of state statutory rights as dictum. ECF 37 at 9. That is incorrect, as the issue of whether the prospective waiver doctrine applies to state rights was both pressed and passed upon.

*Viking River*'s discussion of the unenforceability of prospective waivers of state-law rights informed the Court's holding in that case. The plaintiffs in *Viking River* argued that a California state law was not preempted by the FAA because the law merely prevented the prospective waiver of state substantive rights. 596 U.S. at 651–52. The defendant countered that the "principle that the FAA does not mandate enforcement of provisions waiving substantive rights is limited to federal statutes." *Id.* at 653 n.5. The Court rejected the defendant's argument as "erroneous," explaining that there is nothing "unique about federal statutes" when it comes to the basic principle that "[a]n arbitration agreement … does not alter or abridge substantive rights." *Id.* at 653 & n.5. "That is why," the Court explained, it had "mentioned this principle in *Preston*, which concerned claims arising under state law." 596 U.S. at 653 n.5 (citing *Preston v. Ferrer*, 552 U.S. 346, 360 (2008)). This conclusion underlay the Court's holding that a "wholesale waiver of [the California statutory] claims" would be "invalid." *Viking River*, 596 U.S. at 653, 662–63. Thus, "under our holding," to the extent California law prohibits waiving state rights, this "is not preempted by the FAA, so the [arbitration] agreement remains invalid insofar as it is interpreted in that manner." *Id.* at 662. If the prospective waiver doctrine didn't apply to state law, there would be no such limitation on the Court's holding, and "just as binding as [the Court's] holding is the reasoning underlying it." *Bucklew v. Precythe*, 587 U.S. 119, 136 (2019).

Even if the Supreme Court's discussion were dictum, however, the Court analyzed a question over which the parties joined issue, and the Seventh Circuit has made clear that "[i]n such a case the dictum provides the best, though not an infallible, guide to what the law is, and it will ordinarily be the duty of a lower court to be guided by it." *Reich v. Cont'l Cas. Co.*, 33 F.3d 754, 757 (7th Cir. 1994); *see also, e.g. Bembenek v. Donohoo*, 355 F. Supp. 2d 942, 950 (E.D. Wis. 2005) ("I am bound by the considered dicta of the Supreme Court.").

In sum, the best reading of *Viking River*—as *Harris* effectively acknowledged—is that an arbitration agreement attempting to prospectively waive substantive rights is unenforceable. And that conclusion goes just as much for a "delegation provision," which is simply "an additional, antecedent agreement" to arbitrate the question of arbitrability, as it does for "any other" agreement to arbitrate. *Harris*, 177 F.4th at 782.

**B.** Instead of addressing *Harris*'s discussion of *Viking River*, the Tribal Defendants focus on a handful of mostly unpublished, out-of-circuit district court decisions. These are of no help, either.

While the Tribal Defendants suggest that this Court must send the plaintiff's prospective-waiver challenge to the delegation clause to arbitration, ECF 50 at 4–6, that is contrary to recent Supreme Court precedent that the Tribal Defendants don't mention. In 2024, the Supreme Court emphasized that "[i]f a party challenges the validity of the precise agreement to arbitrate at issue, the federal court *must* consider the challenge before ordering compliance with that arbitration agreement." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 151 (2024). This follows from "the fundamental principle that arbitration is a matter of contract." *Id.* at 147. To "refer[] a dispute to an arbitrator," there must be some valid and enforceable arbitration agreement. *Id.* at 149. And a delegation clause "is simply an additional, antecedent agreement" to arbitrate arbitrability that is subject to the same

7

principles as "any other." *Id.* at 148. So if a party challenges a delegation clause, "the federal court *must* consider the challenge" before it can "order[] compliance" with it. *Id.* at 151. "To hold otherwise would be to impermissibly elevate a delegation provision over other forms of contract." *Id.* at 152.

That's why numerous courts—both within this circuit and outside it—have held that a court must adjudicate whether a delegation clause is invalid under the prospective waiver doctrine before it can order arbitration. *See, e.g.*, *Fahy v. Minto Dev. Corp.*, 722 F. Supp. 3d 784, 798 (N.D. Ill. 2024) ("the Court must consider whether the loan agreement validly delegates the threshold question of arbitrability to an arbitrator" in light of the "prospective waiver doctrine"); *Harris v. W6LS, Inc.*, 2024 WL 2319716, at *3 (N.D. Ill. 2024), *aff'd on other grounds*, 171 F.4th 957 (7th Cir. 2026) (same); *Hengle v. Treppa*, 19 F.4th 324, 336 (4th Cir. 2021) (same); *Williams v. Medley Opportunity Fund II, LP*, 965 F.3d 229, 237 (3d Cir. 2020) (same); *Gingras v. Think Fin., Inc.*, 922 F.3d 112, 126–27 (2d Cir. 2019) (same).

The Tribal Defendants find no more support from the argument that this Court lacks the authority to address the plaintiffs' challenge to the delegation provision because there is "uncertainty" about whether the arbitrator is prevented from applying state law. ECF 50 at 4–5 (citing *Wood v. Niswi, LLC*, 2026 WL 1783843 (W.D. Ky. 2026)). The case on which the Tribal Defendants rely, *Wood v. Niswi*, doesn't address *Coinbase*. Nor did the case on which *Wood v. Niswi* primarily relied. *See Wood v. Ascend Loans, LLC*, 821 F. Supp. 3d 821, 824 (W.D. Ky. 2026). And even before *Coinbase*, have cast doubt about the scope of this principle. *See, e.g.*, *Gibbs v. Sequoia Cap. Operations, LLC*, 966 F.3d 286, 294 (4th Cir. 2020).

In any event, even under the Tribal Defendants' rule, there is no uncertainty here as to whether the arbitrator would be precluded from applying state when determining arbitrability. The

8

contracts unambiguously state that "[t]he laws of the Tribe and applicable federal law will govern this Agreement, *without regard to the laws of any state* or other jurisdiction, including the conflict of laws rules of any state" and that "[t]ribal law and applicable federal law shall *exclusively* apply to [any] dispute." ECF 20-1 at 11 (emphases added). The contracts just as unambiguously make clear that this binds the arbitrator: "[T]he arbitrator shall apply applicable substantive law consistent with the Governing Law set forth above." ECF 20-1 at 18.[4] It doesn't get much clearer than that. *See, e.g.*, *Fitzgerald v. Wildcat*, 687 F. Supp. 3d 756, 777 (W.D. Va. 2023) (addressing similar language).

As a result, in adjudicating whether there is an enforceable arbitration agreement, the arbitrator is unambiguously prohibited from considering "state defenses" to arbitrability, such as unconscionability or any other state-law defenses to the arbitration provision's formation, validity, or enforceability. *Hengle*, 19 F.4th at 338–40; *see generally UNITE HERE Loc. 1 v. Magnificent Mile Hotel Mgmt., LLC*, 177 F.4th 901, 903 (7th Cir. 2026) ("[A]rbitrators cannot violate the terms of the contracts they construe."). The same goes for the Tribal Defendants' assertion that plaintiffs could "raise choice-of-law objections with the arbitrator." ECF 50 at 5. The arbitrator is expressly prohibited from granting objections based on the waiver of substantive state-law rights, as the arbitrator must adjudicate any dispute "without regard" for state law and without applying state

---

[4] In prior briefing, the Tribal Defendants claimed the arbitration provision preserved claims under state law. ECF 37 at 12. But the provision of the contract they quote was simply stating that mandatory arbitration covers all disputes, including any claims brought under state law. ECF 20-1 at 17. That provision in no way supersedes or detracts from the other provisions expressly prohibiting the arbitrator from applying state law—and any other conclusion would improperly render the governing law provision without effect. As courts have held with similar tribal arbitration contracts, "if anything, such language highlights the arbitration provision's impermissible tactic of compelling arbitration of [substantive] claims only to then nullify those claims by precluding application of [substantive] law." *Hengle*, 19 F.4th at 343. Indeed, the whole point is to channel state claims into arbitration and then prohibit the arbitrator from applying state law. *See, e.g.*, *Williams v. Martorello*, 59 F.4th 68, 85 (4th Cir. 2023).

"conflict of laws rules." ECF 20-1 at 11, 18.[5] And a "delegation clause is unenforceable" when it "would require the arbitrator to determine whether the Arbitration Provision impermissibly waives state substantive rights without recourse to state substantive law." *Fitzgerald*, 687 F. Supp. 3d at 777; *Hengle v. Treppa*, 19 F.4th 324, 338 (4th Cir. 2021) (same for federal law); *MacDonald v. CashCall, Inc.*, 2017 WL 1536427, at *4 (D.N.J. 2017) (same for federal and state law), *aff'd*, 883 F.3d 220 (3d Cir. 2018).

In sum, *Harris* further supports the conclusion that the delegation and arbitration provisions in the contracts here violate the prospective-waiver doctrine. And for a court to "order[] compliance" with a delegation provision that violates the prospective-waiver doctrine "would be to impermissibly elevate a delegation provision over other forms of contract." *Coinbase*, 602 U.S. at 152–53.

### <u>CONCLUSION</u>

The Court should deny Tribal Defendants' Motion to Compel Arbitration.

Respectfully submitted,
**PLAINTIFFS,** *individually and on behalf of all others similarly situated*

By: */s/ Thomas Scott-Railton*
Thomas Scott-Railton
Attorney Bar Number: 5687330
**GUPTA WESSLER LLP**
1400 16th Street, NW, Suite 225
Washington, D.C. 20036
Telephone: (202) 888-1741
Facsimile: (202) 888-7792
*thomas@guptawessler.com*

Kristi Cahoon Kelly
Andrew J. Guzzo

---

[5] As explained above, the Tribal Code does not incorporate Wisconsin law in any relevant way. But even if it did, the arbitrator would be prohibited by this provision from considering any Wisconsin law.

**KELLY GUZZO PLC**
3925 Chain Bridge Road, Suite 202
Fairfax, Virginia 22030
Telephone: (703) 424-7572
Facsimile: (703) 591-0167
*kkelly@kellyguzzo.com*
*aguzzo@kellyguzzo.com*


*Counsel for Plaintiffs*

11

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2026, I electronically filed the foregoing brief with the Clerk of the Court by using the CM/ECF system. All participants are registered CM/ECF users and will be served by the CM/ECF system.

July 17, 2026

/s/ Thomas Scott-Railton
Thomas Scott-Railton

*Counsel for Plaintiffs*