UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

ADAM WOOD, Plaintiff,

v. Civil Action No. 4:25-cv-122-DJH

CRANE LENDING, LLC, Defendant.

* * * * *

**MEMORANDUM AND ORDER**

Plaintiff Adam Wood filed this purported class action against Defendant Crane Lending, LLC, alleging predatory and usurious loan practices and asserting claims under Ky. Rev. Stat. §§ 360.010, 360.020, and the Kentucky Consumer Protection Act (KCPA). (Docket No. 1) Crane Lending moves to compel Wood to arbitrate his individual claims and stay this case. (D.N. 13) Wood opposes the motion. (D.N. 21) After careful consideration, the Court will grant the motion to compel and stay the case pending arbitration for the reasons explained below.

**I.**

The following facts are set out in the complaint and exhibits to the complaint. Between September 2, 2022, and September 28, 2024, Wood obtained six loans from Crane Lending for between $300 and $1,150 each. (*See* D.N. 1, PageID.3–4 ¶ 14; D.N. 1-1; D.N. 1-2; D.N. 1-3; D.N. 1-4; D.N. 1-5; D.N. 1-6) Crane Lending, doing business as "Crane Finance," is identified as the lender in the loan agreements for these transactions. (D.N. 1-1, PageID.15; D.N. 1-2, PageID.29; D.N. 1-3, PageID.43; D.N. 1-4, PageID.57; D.N. 1-5, PageID.71; D.N. 1-6, PageID.86) The disclosed annual percentage rates on the loans range from 559.89 to 781.65 percent. (*See* D.N. 1, PageID.3–4 ¶ 14; D.N. 1-1, PageID.15; D.N. 1-2, PageID.30; D.N. 1-3, PageID.44; D.N. 1-4, PageID.58; D.N. 1-5, PageID.72; D.N. 1-6, PageID.86) The agreements governing the loans set

out a dispute-resolution procedure, stating that Wood "shall direct his . . . concerns in the first instance to [Crane's] management" and that "[i]f the dispute is not resolved to [Wood's] satisfaction, . . . [the parties] shall arbitrate that dispute." (D.N. 1-1, PageID.22; D.N. 1-2, PageID.36; D.N. 1-3, PageID.50; D.N. 1-4, PageID.64; D.N. 1-5, PageID.78; D.N. 1-6, PageID.93)

The agreements define "dispute[s]" to include "all claims, disputes, or controversies arising from or relating directly or indirectly to this Dispute Resolution Procedure and Arbitration Provision" and "all U.S. federal or state law claims, disputes, or controversies arising from or relating directly or indirectly to this agreement." (D.N. 1-1, PageID.22; D.N. 1-2, PageID.36; D.N. 1-3, PageID.50; D.N. 1-4, PageID.64; D.N. 1-5, PageID.78; D.N. 1-6, PageID.93)

The agreements outline the law to be applied in arbitration as "[t]he laws of the Tribe and applicable federal law . . . , without regard to the laws of any state or other jurisdiction, including the conflicts of laws rules of any state," and expressly acknowledge that they are "governed by the FAA."[1] (D.N. 1-1, PageID.20, 23; D.N. 1-2, PageID.34, 37; D.N. 1-3, PageID.48, 51; D.N. 1-4, PageID.62, 65; D.N. 1-5, PageID.76, 79)

The agreements include a class-action waiver that reads as follows:

> BY AGREEING TO THE TERMS OF THIS ARBITRATION PROVISION, YOU HEREBY ACKNOWLEDGE AND AGREE THAT YOU ARE WAIVING YOUR RIGHT TO PARTICIPATE IN REPRESENTATIVE CLAIMS AND YOU THEREFORE WILL NOT BE ALLOWED TO SERVE AS A REPRESENTATIVE . . . . THE ARBITRATOR SHALL NOT CONDUCT CLASS ARBITRATION; THAT IS, THE ARBITRATOR SHALL NOT ALLOW YOU TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION.

---

[1] The last agreement uses slightly different language but is also governed by "the laws of the Tribe and applicable U.S. federal law . . . rather than the laws of your state, including the conflict of law rules of any state" and recognizes that the arbitrator shall apply "substantive law consistent with the laws of the Tribe . . . and the Federal Arbitration Act." (D.N. 1-6, PageID.91, 94)

(D.N. 1-1, PageID.23; D.N. 1-2, PageID.38; D.N. 1-3, PageID.52; D.N. 1-4, PageID.66; D.N. 1-5, PageID.79; D.N. 1-6, PageID.95)

Wood filed this purported class action on behalf of himself and all others similarly situated. (D.N. 1, PageID.2 ¶ 7) He alleges that Crane Lending's high-interest loans violate Kentucky law, which prohibits loans with interest rates above 8%. (*Id.*, PageID.5–6 ¶ 23–24, 32 (citing Ky. Rev. Stat. § 360.010)) Crane Lending moves to compel Wood to arbitrate his claims as an individual and stay these court proceedings. (D.N. 13) Wood argues in response that the contract as a whole and the provision delegating issues of arbitrability to the arbitrator are invalid and unenforceable. (D.N. 21, PageID.282–88)

**II.**

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, "embodies the national policy favoring arbitration." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006); *see also Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 450 (6th Cir. 2005) ("[I]t is well-established that any doubts regarding arbitrability must be resolved in favor of arbitration, because there is a strong presumption in favor of arbitration under the FAA." (citations omitted)). Under the FAA, there is a "threshold arbitrability question—that is, whether the[] arbitration agreement applies to the particular dispute." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019). The parties may agree that this threshold question will be delegated to an arbitrator. *Id.* (citations omitted). But "there must be 'clear and unmistakable' evidence that the parties agreed to have an arbitrator decide" arbitrability. *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 844 (6th Cir. 2020) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). In this

case, the language of the loan agreements specifically delegates the issue of the validity of the arbitration provision to the arbitrator. (*See* D.N. 1-1, PageID.22; D.N. 1-2, PageID.36; D.N. 1-3, PageID.50; D.N. 1-4, PageID.64; D.N. 1-5, PageID.78; D.N. 1-6, PageID.93)

"[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." *Buckeye*, 546 U.S. at 445 (citing *Southland Corp. v. Keating*, 465 U.S. 1 (1984); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967)). Therefore, a plaintiff who seeks to contest arbitrability must do more than challenge the validity of a contract as a whole. *Rent-A-Center W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) (citations omitted). Instead, the plaintiff must "challenge[] specifically the validity of the agreement to arbitrate." *Id.* (quoting *Buckeye*, 546 U.S. at 444). In making that challenge, the plaintiff "may attack a delegation clause using the same arguments it raises against the entire arbitration agreement." *Swiger v. Rosette*, 989 F.3d 501, 506 (6th Cir. 2021) (citations omitted). Here, Wood challenges the contract as a whole and the delegation clause specifically, relying on the prospective-waiver doctrine. (*See* D.N. 21, PageID.282–88)

**III.**

The prospective-waiver doctrine provides that "in the event the choice-of-forum and choice-of-law clauses [of a contract] operate[] in tandem as a prospective waiver of a party's right to pursue statutory remedies," courts should "have little hesitation in condemning the agreement as against public policy." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985) (citations omitted). The doctrine prohibits arbitration agreements that strip plaintiffs of substantive rights under federal law, and the Supreme Court has indicated that it also

applies to waivers of state-law rights.[2] *See Viking River Cruises, Inc. v. Morana*, 596 U.S. 639, 653 n.5 (2022) ("Viking argued that the principle that the FAA does not mandate enforcement of provisions waiving substantive rights is limited to federal statutes. This argument is erroneous." (citing *Preston v. Ferrer*, 552 U.S. 346, 360 (2008))).

**A. Choice-of-Law Provisions**

Wood asserts that the delegation provision is invalid under the prospective-waiver doctrine because the agreement's choice-of-law provision bars the application of Kentucky law.[3] (D.N. 21, PageID.285–86) The agreement provides that it is governed "by the laws of the Tribe and

[2] Crane Lending contests the application of the prospective-waiver doctrine to state law. (D.N. 22, PageID.300–02) A few courts have read the language of *Viking River* narrowly and refused to apply the prospective-waiver doctrine to state law. *See, e.g.*, *Bridges v. Raines*, No. 1:24-cv-00087-MR-WCM, 2025 WL 3565343, at *4–5 (W.D.N.C. Dec. 10, 2025); *Walton v. Uprova Credit LLC*, 722 F. Supp. 3d 824, 836–37 (S.D. Ind. 2024). But numerous courts, including this one, have found that the doctrine does apply to state law. *See Wood v. WL6S*, No. 4:24-cv-128-DJH, 2025 U.S. Dist. LEXIS 281463, at *9 (W.D. Ky. Sep. 30, 2025); *Williams v. Opportunity Fin., LLC*, No. 24-cv-09730, 2025 WL 2300296, at *2 n.2 (N.D. Ill. July 17, 2025) (citations omitted) (noting that district courts in the Seventh Circuit have begun to apply the prospective-waiver doctrine to waivers of state-law rights); *Fitzgerald v. Wildcat*, 687 F. Supp. 3d 756, 776 (W.D. Va. 2023) ("Fourth Circuit precedent supports extending the prospective waiver doctrine to an arbitration provision prospectively waiving *all* state substantive rights." (citations omitted)). Because the Court concludes below that the delegation provision is valid in any event, it need not address this argument.

[3] Wood cites cases from other circuits in support of his argument. (*See* D.N. 21, PageID.283–86) Those cases, however, each involved an agreement with a choice-of-law provision that purported to waive application of both state and federal law and are therefore distinguishable from this case. *See Gingras v. Think Fin., Inc.*, 922 F.3d 112, 118 (2d Cir. 2019) (provisions stating that the agreements were "subject solely to the exclusive laws and jurisdiction of the Chippewa Cree Tribe of the Rocky Boy Indian Reservation" and that "no other state or federal law or regulation shall apply"); *Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 669 (4th Cir. 2016) (agreement stating that "no [non-tribal] state or federal law or regulation shall apply to this Loan Agreement" (emphasis omitted) (citations omitted)); *Williams v. Medley Opportunity Fund II, LP*, 965 F.3d 229, 238 (3d Cir. 2020) ("[T]he governing law section of the loan agreement states that 'this [Loan] Agreement is governed only by Tribal Law and such federal law as is applicable under the Indian Commerce Clause of the United States Constitution.' . . . . '[T]he parties have not' . . . identified any 'such federal law as is applicable under the Indian Commerce Clause' . . . ."). Here, there is no exclusion of federal law under the terms of the loan agreement. (*See* D.N. 1-1, PageID.20, 23; D.N. 1-2, PageID.34, 37; D.N. 1-3, PageID.48, 51; D.N. 1-4, PageID.62, 65; D.N. 1-5, PageID.76, 79)

applicable federal law . . . , without regard to the laws of any state or other jurisdiction, including the conflict of laws rules of any state."[4] (D.N. 1-1, PageID.20; D.N. 1-2, PageID.34; D.N. 1-3, PageID.48; D.N. 1-4, PageID.62; D.N. 1-5, PageID.76)

Concern that a choice-of-law clause might bar the enforcement of substantive rights should generally be dealt with at the award-enforcement stage. *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 540–41 (1995); *Mitsubishi Motors*, 473 U.S. at 638. A court should find a prospective waiver at the arbitration-enforcement stage only if there is no "uncertainty" that the "choice of law would preclude otherwise applicable . . . substantive statutory remedies." *Dillon v. BMO Harris Bank, N.A.*, 856 F.3d 330, 334 (4th Cir. 2017) (citations omitted). Thus, when it is possible that an arbitrator will interpret the choice-of-law provision to allow state substantive law to apply, arbitration should still be ordered. *See Dunn v. Glob. Tr. Mgmt., LLC*, No. 21-10120, 2024 WL 4379966, at *12–14 (11th Cir. Oct. 3, 2024) (per curiam). Provisions requiring the arbitrator to apply the FAA or ambiguities in the choice-of-law principles that will be applied also support enforcing arbitration. *Id.*

Wood relies in part on a district-court case involving a loan agreement virtually identical to the one at issue here.[5] (*See* D.N. 21, PageID.279, 284 (citing *Harris v. W6LS, Inc.*, No. 23-CV-16429, 2024 WL 2319716, at *9 (N.D. Ill. May 22, 2024), *aff'd*, 171 F.4th 957 (7th Cir. 2026))) Yet the *Harris* court carefully noted that the defendants there "argue[d] only that the prospective waiver doctrine d[id] not apply to substantive state law rights; they ma[d]e no alternative argument

[4] As noted above, the final agreement uses different language; however, its meaning is materially the same. (*See* D.N. 1-6, PageID.91)

[5] Though Wood also cites *Parker v. Tenneco*, 114 F.4th 786 (6th Cir. 2024), Parker did not involve choice of law. *Id.* at 790, 801. In this case, unlike in Parker, the contract and choice-of-law principles are not so clear that the Court can find the delegation provision invalid and take the arbitration question out of the arbitrator's hands.

that if the Court h[e]ld that the doctrine applie[d] to state law, the Court should nevertheless enforce the arbitration agreement." 2024 WL 2319716, at *9. Aside from the fact that *Harris* is an unpublished district-court case, because it did not address the same arguments presented in this case, *Harris* does not require denial of Crane Lending's motion to compel. *See id.* Nor does the Seventh Circuit's decision affirming *Harris* because that affirmance did not reach the prospective-waiver issue.[6] *See Harris*, 171 F.4th at 967 ("[W]e need not reach the untrodden ground of prospective waiver of state-law rights post-*Viking River Cruises* and leave that question for another day.").

Wood's agreements allow for the application of federal law, including the FAA, at the arbitrability stage. (*E.g.* D.N. 1-1, PageID.20, 23) Thus, he is free to raise choice-of-law objections with the arbitrator. *See Dunn*, 2024 WL 4379966, at *12–14. The arbitrator may decide that the application of the Tribal Code and the FAA to the contract will require that Kentucky law be applied, especially in light of the prospective-waiver doctrine. But the question "must be decided in the first instance by the arbitrator." *Vimar Seguros y Reaseguros*, 515 U.S. at 541. If Wood believes that the arbitrator's determinations are erroneous, he may seek later judicial review.[7] *See id.*; *Mitsubishi Motors*, 473 U.S. at 638; *Dillon*, 856 F.3d at 334 (citations omitted).

[6] The Seventh Circuit rooted its decision in a lack of mutual assent because tribal contract law did not exist when the agreement was made. *See Harris*, 171 F.4th at 963–66. Wood does not argue that the tribal contract law at issue here is similarly nonexistent. (*See* D.N. 21)

[7] This result is also supported by the Court's decisions in two similar cases involving Wood. *See Wood v. Ascend Loans, LLC*, No. 4:25-cv-18-RGJ, 2026 WL 16495 (W.D. Ky. Jan. 15, 2026); *See Wood v. WL6S*, No. 4:24-cv-128-DJH, 2025 U.S. Dist. LEXIS 281463 (W.D. Ky. Sep. 30, 2025). Wood does not attempt to distinguish those opinions and notes only that he has moved for reconsideration in those cases. (*See* D.N. 21, PageID.288 n. 5)

**B. Kentucky Revised Statutes § 360.010**

Wood also argues that the delegation provisions are invalid because the contracts are for loans at an interest rate above 8%, and Kentucky forbids loans at such rates under Kentucky Revised Statutes § 360.010. (D.N. 21, PageID.288) But a contention that a contract is void or voidable under state law due to its subject matter does not specifically challenge the validity of the delegation provision contained therein, which is severable from the remainder of the contract. *Buckeye*, 546 U.S. at 445–46 (citing *Prima Paint*, 388 U.S. and 400–04). Therefore, Wood's argument based on § 360.010 fails because it is directed at the subject matter of the contract and not the delegation provision specifically. *See id.*

**C. Class-Action Waiver**

Wood argues that the class-action waiver should not apply on the ground that the delegation provision is invalid. (D.N. 21, PageID.288–89) Because the Court rejects Wood's arguments as to the delegation provision, Wood must arbitrate arbitrability as an individual. *See Stolt-Nilesen S.A. v. Animal Feeds Int'l Corp.*, 559 U.S. 662, 684 (2010) ("[A] party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so."); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) ("Requiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA.").

**D. Request to Stay**

"If the Court determines that the issue is referable to arbitration 'and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding' rather than dismiss the case." *Wilson v. Midland Credit Mgmt., Inc.*, No. 3:24-cv-476-DJH-RSE, 2025 WL 2263688, at *1 (W.D. Ky. Aug. 7, 2025) (quoting *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024)). Because

the Court will compel arbitration and the defendants have requested a stay pending arbitration, a stay is required. *See id.*

**IV.**

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that Defendant Crane Lending's motion to compel individual arbitration and stay the case (D.N. 13) is **GRANTED**. The parties are **COMPELLED** to arbitrate Wood's claims pursuant to the arbitration provisions contained in the loan agreements. This matter is **STAYED** pending arbitration pursuant to 9 U.S.C. § 3. The parties **SHALL** submit a joint status report every **ninety (90) days** and promptly report on the outcome of the arbitration.

August 12, 2026

**David J. Hale, Chief Judge**
**United States District Court**